Judge Milus
delivered (he Opinion of the Court.
Joel White and wife filed their bill against the administrator and heirs of William Bush, charging, Ihí^t in the year 1793, Richard Stites marriedtPolly Bush, one of said William Bush’s daughters, and lived with her about a year, and abandoned her, and afterwards died, and that said Polly afterwards married Benjamin Hicronymous, and that Mrs. White is the only issue of the first marriage ; that shortly after the marriage of Stites, said William Bush gave his said daughter Polly a negro boy named Spencer, and a negro girl called Betty, and her husband accordingly held them in possession till the separation, when he sold Spencer, and said Polly returned to her father’s house with Betty, where the said William Bush assumed to be guardian of Mrs. White till her marriage, and kept the said Betty and her children since born, now two in number, and *101 that the slaves were given by him to some of his other children, or divided among them, in the distribution of his estate, which had taken place, and that no administrator was ever appointed on the estate of said Richard Stites, except so far as said William Bush acted as such in his own wrong. The bill prays an account to be taken, both of the personal estate of said Stites, and of the hire of the slaves, and that the slaves may be delivered over with their hire.
Answer of Bush’s repr’s.
Decree of th'ecircuit court.
Where the personal scrvices of an infant, in the family of her" assumed guardian, are equal, to her maintenance, she shall- not be charged.
*101 The representatives of William Bush admit the relationship between the parties j deny that said slaves were distributed with the rest of Bush’s estate, or brought into hotchpot at the time j.but were given long before the death of said Bush to Thomas T. Bush, one of his sons-in-law, who had sold one of them to another son-in-law* and another to a son, and still held the third himself; and they flatly deny the gift of Betty to Stites or his wife, and on this point the controversy chiefly rests, as to matter of fact.
The court below decreed in favor of the complainants, both as to the slaves and their hire, it turning out in proof, that Stites had no personal estate ever in the hands of William Bush, except one horse of little value, which was left at said William Bush’s, at the time Stites abandoned his wife, where the said horse staid till he died. From this decree, the administrator and heirs of said William Bush have appealed to this court.
Without reciting the details of the testimony which satisfies our minds upon the subject, suffice it to say, that we concur with the court below, that the evidence is sufficient to establish the gift to, and possession of, the slave in Stites, during his marriage with the daughter of said Bush, and the court below did not err in deciding in favor of the complainants in this particular.
It appeared that Mrs. White lived with her grandfather, where the slave was, for about eleven years, and afterwards she went to live with Thomas T Bush, who had married her aunt, to whom, also, the slaves were given at the same time.
In the account for hire, the court directed a de *102 (faction to be .made for the maintenance of Mrs, White, and the raising of the young slaves. The commissioners accordingly decided, that the hire of the slaves was not more than adequate to defray the expense of raising Mrs. White, during her stay with her grand-father, and, therefore,'for that period, reported no hire against his estate. But after Mrs. White came to. t,he house of Thomas T. Bush, she being older, an d more capable of defraying the price of her maintenance by her labor, and it being proved to them, tiia.t on her marriage, said T. T. Bush acknowledged that she had been so good a girl that he felt himself bound to do something for her, th.ey allowed nothing for her maintenance, but charged him with the hire, as well as the other holders of the slaves, and this is strongly objected to. Wo see no impropriety in this allowance. She ought, at that age, to have been able, by her services, to render compensation for her maintenance, and by the acknowledgments of Thomas T. Bush, it is presumable. she did so. Of course, according to the principles recognized by this court in the case of Henning vs. Conner, 2 Bibb 188, no allowance for ber maintenance ought to have been made.
Representatives of an assumed guardian, hero ■the grandfather, who disposed of the slaves of the ward,. shall account for their hire up to the day of.their rccovery. That the grandfather in such case, made a gift oí the slaves to his son, and he had their use, and might not be accountable to his father’s representatives, is not material to their liability.— These are rules oflaw followed by-equity.— —Ino detinue, where defendant had possession at any time, he is liable for the thing, and hire up to the time <r" trial.
*102 The court, however, decreed the hire allowed for the slaves after they left the possession of William Bush, against his estate generally, and indeed against ail the defendants, notwithstanding the slaves were then held, and the hire found due for the time they were held, by Thomas T. Bush and his vendees, it is supposed, relying on the principle that the hire must ultimately come out of the estate of William Bush, because he had given away the-slaves, when he. ought to have kept them for Mrs. White, bis grand daughter. This part of the decree is objected to as erroneous.
Whether, under the gift made of the slaves to Thomas T. Bush, he, the said Thomas, could have recourse on William Bush’s estate for the value of tí¿e slave, when recovered by another claimant, and also for the hire, which might be recovered of him by the adverse claimant, may be somewhat problematical, and might essentially rest upou the nature and purpose of that gifij and whether the said *103 Thomas received the. slaves innocently, not supposing that, by the reception of them, he would be deluded into a suit, a recovery of the slave, and an account for the hire ; or whether he accepted her, knowing of the claim and running the risque. This would be better tried in an issue made up between the said Thomas, and the personal representative of the said William Bush’s estate ; and although he, as well as the personal representatives of Willikm Bush, are parties to this suit, yet as they are co-defendants only, uniting in a contest against the adverse claimants, and their attention is not called to the extent of the liability of William Bash’s estate, to said Thomas, for the hire or the value, if this question vested exclusively upon the liability of the estate of William Bush to account to the said Thomas, for the hire of value, we should hesitate to sanction this part of the decree. But the question does not rest on this point. •
The estate of William Bush might not be bound to make good the hire to Thomas T. Bush, and yet the. complainants may have a dear right to make the estate responsible for that hire. It is dear that detinue may be supported against one who has held the slave of another, but does not hold the slave when the suit is commenced ; for possession in the defendant at the commencement- of the suit, is not necessary in such case, and if the defendant has parted with the slave which does not belong to him, especially knowingly, as William Bush did in this case^ he is, unquestionably, liable to the true owner for all the hire to the time of the judgment, in an action at law.
Equity, then, which follows the la.w, cannot refuse to charge the estate of William Bush with the hire. This court has decided that an administrator, who had sold a slave improperly, was not only liable for the value, but also the hire, till the time of recovery. See Ilenning vs. Conner, before cited. It cannot then be wrong in this instance, to charge the estate of Wiiliam Bush with the hire, when he assumed, without legal authority, the office of an administrator, guardian and trustee of the estate of Stiles, and yet with his eyes open, disposed of the *104 estate improperly. This part of the decree fa$ therefore, not thought to be erroneous, especially as this sum for hire is directed to be levied on the administrator and heirs, in their representative character.
Ordinance of Congress for ilie government of the N. W. Territory, liberated all slaves removed and settled (here by their owners.
This court titkes judicial nolice of that ordinance, as the supreme law, and that nets or the territorial government, contrary to it, wore void.
In a suit by he ward, against the representatives of the guardian, for tWrhh-c^aa exception to an allowance f10 01.3-> rCport," on the ground the persons slaves wfcre free, is suffis„e.d0 inis'
*104 There is one other point in the cause which cuts a considerable figure, and wears a more serious aspect, and it was made after the interlocutory decree, and in a petition to file an amended answer, and for a re-hearing. It is dearly proved, and not contradicted, that when Stites got the slave, lie moved to, arid remained in the then territory northwest of the river Ohio, now the State of Ohio, where the slave Betty, since the mother of the other slaves, remained with him until the time he abandoned his wife. Whether the slave was first taken there by Stites, or in his care, or* was taken by his father first, under the hiring of William Bush, and then, after the time of hiring was out, delivered over to Richard Stites, the testimony is not agreed. And it is not material which was the fact; for in either case the slave went to reside there with the consent of both Richard Stites and William Bush, one of whom must, at that time, have been her owner. This residence in the now State of Ohio, being before it was a State, and while it was under the ordinance of Congress which forbade slavery there, certainly destroyed .all title to Betty, let her belong to whom she would, according to the principles settled by this court, in the case of Rankin vs. Lydia, 2 Marsh. 467.
That ordinance was paramount to the territorial laws, and restrained the legislative power there, as effectually as a constitution does, in an organized State. It was a public act of the Legislature of the Union, and a part of the supreme law of the land,, and, as such, this court is as much bound to take notice of it, as it can be of any other law.
We attach not much importance to the petition for a re-hearing on this point. It came late, praying leave to suggest this fact in an amended answer, when the same matter had been long known in the cause, and it had but one supplemental fact in it, as an apology for presenting the petition at that late *105 hour, and that was, that one of the slaves bad commenced an action to assert-and establish his freedom. It. is not necessary to determine whether this fact was sufficient t~ have justified the granting of the petition, until we aseen <iin whether there not enough in the cause before that, to require a notico of the matter by this court. The report for hire was excepted to, on the ground, that no hire ought to bo allowed while the negroes were free, and this was sufficient to bring the point to the notice of the court, if the pleadings, as they stood, reqnired no such notice to be taken.
In a suit foislaves, if it i?e whether alleged or not, *hat ,the Per~ test arefreé the claimant
If a fact bo yJ]tod^-n ^ showJthat the persons claimed as iroe^twill be fatal,tho’ defendants the^S their property. If the persons sued for, as slaves are proved to be free, ¡md the suit fails, as to them,ibere can be no hire recovered.
*105 It is now insisted for the appellees, that the pleadings do not allege this matter, and, therefore, the court cannot notice it, and that if the pleadings had put it in issue, anti the attention of the parties had been called to it, the testimony might have borne ii different aspect. This argument, though specious, ls not satisfactory. The complainants were bound to make out their title in proof, and if while attempting to do this, and in destroying the title of their adversaries, they showed that they- themselves had no title, was not the court bound to notice it, ait hough the pleadings did not allege it ? Here the difficulty arises in giving the complainant a decree for erty, when the proof shows right in another and not ip himself.
But the pleadings in this case are not silent. It is true, the answer does-not contend that the slaves belong to neither of the parties, hut to themselves j but some of the answers do suggest the residence in Ohio. ” But to put. thG matter beyond doubt, the bill, after stating the title and possession of Richard Stitcs, during his cohabitation with his wife, dedares, that at the time of his death, he resided in the northwestern territory, and out of the limits of this State, and that (i no fart of his estate toas in this State at the time of his death.” It then must follow, that the slaves were in the territory also. These facts appearing in the pleadings, being supported by proof, show title out of the complainants in the property for which they sue, and are condijSive against their right to recover.
Crittenden for appellants ; Ilansoii and Tanl for appellees.
It is insisted that (Uc complainants ought to recover the hire, ad interim, although the slaves may not be theirs at this time, if they have shown that Stiles once had title because the slaves themselves can recover only nominal damages for their detention in slavery. If the premises be admitted, the Conclusion does not follow ; for if it be conceded that these slaves cannot recover (heir hire, it does not result that any other person may, and if the defendants cannot in conscience retain it, everybody lias a right to it.
The decree must be reversed with costs, and the cause he remanded, with directions to dismiss the bill with costs.