O. F. MABREY, Respondent, v. CAPE GIRARDEAU & JACKSON GRAVEL ROAD COMPANY, ·Appellant.

St. Louis Court of Appeals, February 25, 1902.

1. **Negligence: EVIDENCE.**   In the case at bar, there was evidence tending to establish negligence on the part of defendant which was rightly submitted to the jury.  The road was too narrow and in an unsafe condition at the place where the accident occurred. Not only was the ditch into which plaintiff fell, shown to be dangerous, but it was also shown to have been there for a long time, and that the superintendent of defendant company had actual notice of its dangerous state.  The road was not in a condition which the law under the provisions of section 1226, Revised Statutes 1899, required it to be kept.

2. **Petition, Sufficiency of: ALLEGATION OF LOSS OF TIME: DAMAGES.**  A petition in an action for personal injuries, complies with the rule in regard to pleading loss of time or earnings as special damages which states that the plaintiff was confined to his bed for a period of three weeks on account of his injuries and was unable to do any manual labor for a period of four weeks and asks damages for loss of time as well as for his physical and mental suffering.

3. ——: ——.   Following the case of Gerdes v. Iron and Foundry Company, 124 Mo. 346, it was not necessary, in the case at bar, to allege the value of the time lost.

4. **Pleading and Evidence: VALUE OF TIME LOST.** It was held to be sufficient proof of value of time lost when the evidence adduced tending to prove the value of the plaintiff's time, was proof of his occupation and his usual employment, that his business was farming and that he was accustomed to work as a hand on his farm.

5. **Proof of Value of Time Lost: DAMAGES.** When loss of time is counted on as a ground for compensation in damages, there must be such proof of the value of the time lost as can be given under the circumstances.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Wilson Cramer* and *R. B. Oliver* for appellant.

(1) The court erred in giving the instructions prayed for by the plaintiff, because there is no testimony showing that the plaintiff's stomach or bowels was injured. His petition charges that the injury was done to his stomach and bowels. The testimony of all three of his physicians was that neither his stomach nor bowels was injured. He can not sue for one injury and recover for another and different one. He can not make one case by his pleadings and recover on a different state of facts. The testimony is not at variance, but it is a failure of testimony. Sec. 798, R. S. 1899; Reid v. Bott, 100 Mo. 62; Gurley v. Railroad, 93 Mo. 445; Newham v. Kenton, 79 Mo. 382; Bank v. Armstrong, 62 Mo. 59; Baldwin v. Whaley, 78 Mo. 186; Ross v. Ross, 81 Mo. 84. (2) The court erred in refusing to instruct the jury as prayed for by the defendant. The testimony shows that the plaintiff was a trespasser on the property of the defendant. It would be a hard rule that would compel the defendant to pay this plaintiff for an alleged injury done him when he was at the time of the alleged accident on the defendant's property without its permission, without compensating or paying the defendant for the use of its road-

way. He was, at the time, a wrongdoer and ought not to be rewarded for his attempt to wrong this defendant out of its lawful toll for the use of that portion of its roadbed west of Bee postoffice, or where the Fredericktown road leaves the defendant's roadbed.

*T. D. Hines* and *W. H. Miller* for respondent.

(1) The plea of contributory negligence is in the following language: "And for another and a further answer defendant alleges that if plaintiff was injured, as alleged in his petition, it was through his own carelessness and negligence. and not on account of any fault or omission of defendant, and defendant pleads plaintiff's negligence in bar of this suit, and again prays judgment." We submit that this is not such a plea of contributory negligence as required by the law, and no evidence was admissible under it. Thompson v. Railroad, 51 Mo. 190; Buesching v. Gas Light Co., 73 Mo. 219; Harrison v. Railroad, 89 Mo. 147; Huckshold v. Railroad, 90 Mo. 548; Hudson v. Railroad, 101 Mo. 13; Northup v. Ins. Co., 47 Mo. 645. (2) The third count in the answer, respondent contends, is not defensive, even if supported by the testimony. It was defendant's duty to keep its roadway in a reasonably safe condition for public travel. The public are invited to use the defendant's roadway, and there can, in respondent's view of this case, be no such thing as a trespasser upon property of the character and kind operated by defendant. (3) The statute provides the character of road which defendant shall maintain and keep. R. S. 1899, sec. 1226.

GOODE, J.—Respondent was injured by the overturning of a farm wagon in which he was riding with his father and brother along a turnpike or toll road belonging to the defendant company, and which runs between the city of Cape Girardeau and the town of Bufordville. At the point where the

injury occurred, the roadbed was in a narrow valley or depression, with sloping hillsides on either side of it, down which water flowed during a rain-fall with the result, it seems, of causing a washout or ditch on the south side of the road, some seven feet wide and four feet deep.

The parties in the wagon had been in the town of Jackson and had started home late in the evening of an August day; night overtook them and it became dusk or dark so they were unable to see clearly and the left wheels of the wagon were driven into this ditch, the consequence being that the wagon capsized, throwing the occupants out and very seriously injuring the plaintiff who was rendered unconscious for several hours, was afterwards confined to his bed for about three weeks and kept from his employment, which was that of a farm hand, for four weeks or more.

Estimates differ as to the width of the roadway where the wagon was overturned, varying from eleven or twelve feet to fifteen feet. We find little conflict in the testimony, and the case was undoubtedly one to be submitted to the jury under appropriate instructions.

One point insisted on by the appellant for a reversal is that plaintiff and his companions had only paid toll over the turnpike to a place called Bee postoffice, but continued to travel it beyond that point until the accident occurred. It seems that the usual way for these parties to go home from Jackson was to diverge from the toll road at Bee postoffice on to a highway known as the Fredericktown road, but on this occasion, as it was getting late and dark and a rain impending, the father, Robert Mabrey, directed his son Warren to continue along the turnpike, when they reached the Fredericktown road, instead of taking the latter.

That, in the circumstances of this case, respondent was a trespasser on the appellant's highway and therefore appellant is not answerable for an injury he may have received on ac-

count of defects in the road, is a proposition that can not be entertained.

The testimony shows that Robert Mabrey, the father, paid the toll and that neither the respondent, who was riding on the front seat with his brother Warren, nor Warren, who was driving, knew to what point he had paid it, nor had given any attention to the matter; in fact, the respondent was simply a passenger in the wagon and had nothing to do with the payment of toll.

But aside from this, there was no trespass anyhow, by either of the travelers. Toll had been paid at the last gate they passed and because the old man afterwards changed his mind and concluded to go a short distance further than he intended, it by no means follows that he and his sons became trespassers and not entitled to a safe road to travel over. The only result of their journey being prolonged on this particular highway, further than they had paid to use it, was that they owed the defendant additional toll and, we suppose, would have paid it at the next gate, or, if they were attempting to evade the payment of toll by practicing a deception on the gate-keeper (of which there is no evidence), the law prescribes a remedy and a penalty. R. S. 1899, sec. 1233.

The road was too narrow and in an unsafe condition at the place where the accident occurred, as the testimony shows, and as is virtually conceded by the appellant. Not only was the ditch into which respondent fell shown to be dangerous, but it was also shown to have been there for a long time and that the superintendent of the gravel road company had actual notice of its dangerous state. The road was not in the condition the law required it to be kept (R. S. 1899, sec. 1226); so there was evidence tending to establish negligence on the part of the defendant, which was rightly submitted to the jury. M. H. C. & T. P. R. Co. v. Maupin, 79 Ky. 101.

Plaintiff charges that when the wagon turned over he fell on his stomach and bowels and sustained serious and painful

injuries, which averment the appellant contends was unsupported by any testimony proving the stomach and bowels were injured. We can not agree to this assertion, for we find abundant testimony of most serious injury to one or both of those organs. The plaintiff himself swore a wheel of the wagon struck his body over the stomach and bowels, knocking him senseless and hurting him so badly he was confined to his bed for three weeks. One of the physicians who attended the case said that a few days after the accident he found a hard cake in the left side, from which general peritonitis set up and his bowels were swollen, though there was but slight external discoloration from bruises. He diagnosed the patient's ailment as traumatic peritonitis, due to injury. Another physician swore plaintiff had acute peritonitis, swollen bowels and showed a few bruises.

In the face of such testimony, this assignment of error, based on a supposed failure to prove the specific injury alleged, is overruled.

Another point akin to the foregoing is made against an instruction given at the respondent's request on the score that it lost sight of the nature of the injury charged in the petition to have been received by the respondent and authorized a verdict for him if the jury found he was injured anywhere. Said instruction, after hypothecating other essentials to a recovery by the respondent, told the jury that if he was thrown down the embankment and was injured by the wagon falling on him so as to confine him to his bed and render him unable to labor for any length of time, and that he suffered pain and mental anguish which were occasioned by the negligence of the defendant, as previously set out, they should return a verdict in favor of the plaintiff.

It was impossible for the jury to be misled by that direction; for the evidence was all one way as to where plaintiff's injuries were and their nature. Besides, the petition does not specifically confine them to the stomach and abdominal

viscera but only says: "one of the wheels of the wagon fell upon his stomach and bowels inflicting on him serious and painful injury." There is no merit in this assignment.

The following instruction was given by the court on respondent's request:

"The court instructs you that if your verdict be for the plaintiff, and you find that he was compelled to pay or became obligated to pay, out any sum of money for medical attendance and nurse hire by reason of his injuries, as set out in instruction No. 1, you will allow him such sum for such medical attention and nurse hire as from the evidence to you may seem just and proper, not to exceed $58.75; and in estimating his damages, if you believe he was damaged, you may further take into consideration his loss of time, if any, as well as his bodily and mental pain, if any, together with the nature and character of his injuries, if any, growing out of the negligence and carelessness of defendant as set out in instruction No. 1, provided you find from the evidence such negligence to exist, but in no event should the aggregate of your verdict exceed $803.75."

The objection urged against the foregoing charge is that there was no evidence to show what plaintiff was earning at the time the accident occurred, or what his time was reasonably worth. The petition specifically stated that the plaintiff was confined to his bed for a period of three weeks on account of his injuries and was unable to do any manual labor for a period of four weeks, and asked damages for loss of time as well as for his physical and mental suffering, thus fully complying with the rule in regard to pleading loss of time or earnings as special damages. It is true there was no allegation as to the *value* of the time lost, nor was it necessary there should be, as was decided in Gerdes v. Iron & Foundry Co., 124 Mo. 346. It was enough to specify that item as one for which compensation was claimed.

All the evidence adduced tending to prove the value of the plaintiff's time was proof of his occupation and usual em-

ployment, that his business was farming and that he was accustomed to work as a hand on his farm, or the one he was conducting in conjunction with his father. When the accident happened he and his father were raising, or, we suppose, preparing to raise a crop of wheat together on the father's farm. The rule is that there must be some testimony from which the jury can estimate with approximate accuracy the amount of any element of damage which is susceptible of measurement at all; and when loss of time is counted on as a ground for compensation, there must be such proof of the value of the time lost as can be given. This we think was directly decided in Slaughter v. Metropolitan Street R'y Co., 116 Mo. 269, and is the accepted rule.

But the question arises, what is sufficient evidence in a case of this kind? It is a general doctrine of the law of damages that a plaintiff is only required to produce the best evidence of the amount of the damages sustained by him which the nature of the case permits. Huse & Loomis Ice & Trans. Co. v. Heinze, 102 Mo. 245. Indeed, it is a doctrine in regard to all proof that only such evidence as the issue is susceptible of, need be adduced; nor will a party be denied any compensation for a particular loss which he has sustained, because there is no definite way to measure the extent of such loss. In actions for personal injuries, the principal injury to be compensated is nearly always physical pain and mental suffering in connection therewith, of which there is no criterion except the sound judgment of the triers of the fact based on everyday experience, common sense and that mass of opinion which exists among people concerning the affairs and circumstances with which they are familiarized by the ordinary incidents of life. So the law wisely and necessarily commends the solution of such problems to juries, reserving to the courts the prerogative of setting aside their awards if they are plainly exorbitant or plainly inadequate.

As was said by the Supreme Court of the United States in Railroad v. Barron, 72 U. S. 90:

"The damages in these cases, whether the suit is in the name of the injured party, or, in case of his death, under the statute, by the legal representative, must depend very much on the good sense and sound judgment of the jury upon all the facts and circumstances of the particular case. If the suit is brought by the party, there can be no fixed measure of compensation for the pain and anguish of body and mind, *nor for the loss of time and care in business, or the permanent injury to health of body.* So when the suit is brought by the representative, the pecuniary injury resulting from the death of the next of kin is equally uncertain and indefinite."

In Nebraska City v. Campbell, 67 U. S. 592, a case similar to this one, the plaintiff, who was a physician, and had been thrown from his buggy by a defective bridge, was allowed to prove that he had an extensive practice at the time of the injury and also that it was a period of great sickness in the community; and it was ruled that this evidence was pertinent as laying a foundation which enabled the jury to ascertain with some degree of certainty the direct and necessary damage caused by the injury he had received. To the same effect is Wade v. Leroy, 20 How. (U. S.) 34.

In Texas Pac. R'y Co. v. Bigham, 90 Texas 223, the defendant had been injured by the negligence of the railroad company and recovered a judgment for his injuries, which was assailed on the ground that the trial court had submitted to the jury the issue of reasonable compensation to the appellee for the loss of his time which was shown to have been three weeks. It seems the appellee in that case clerked in a store and the court held the assignment of error good because the value or contract price of his wages though easily susceptible of proof by the appellee and his employer, was not stated. The opinion said in such a case the jury should not be left to mere conjecture and that it was not "analogous to those cases

of uncertain damages, which in their nature can not be ascertained with mathematical precision."

In another case decided by the same court, in which the plaintiff sued for the loss of both his own and his wife's time, the trial court gave the following charge to the jury :

"If you should find for plaintiff, you will allow by your verdict such a sum of money as you may believe from the evidence, as a cash payment, will fairly compensate him for the value of any loss of his time or his wife's time that you may believe from the evidence was caused by his injuries or his wife's injuries, if any."

This charge was objected to on the ground that there was neither allegation nor evidence of the time lost by the plaintiff or his wife. Treating this assignment of error, the appellate court said, in regard to the recovery by the plaintiff for the loss of his own time:

"His time and the value of it may be of a character that may be proven and if such is the case, it ought to be alleged. If, however, he was engaged in such a business that the value of the time lost from it could not well be ascertained by reason of the non-existence of any rule to measure it by, the jury, from all the facts before them, could, in their discretion, award him an amount sufficient as reasonable compensation for the time lost.

"And such a rule," it was said further, "might also apply in a case where the plaintiff loses time as the result of injuries, but is unable to prove its value because he was not then engaged in any service or business. In such instances, he would clearly be entitled to some compensation for the time lost, and the fact that the value of it was not susceptible of proof would entitle the jury to award him some amount as reasonable compensation." M. K. & T. R. Co. v. Vance, 41 S.W.167.

In a death case the Supreme Court of South Carolina said:

"It is very obvious, in many cases, slander, etc, it is impossible to show by evidence the amount in dollars and cents,

of the damages sustained and yet we have never heard it suggested even that the inability to do this precludes the jury, when the facts and circumstances are laid before them, from making their own estimate of the amount of the damages recoverable in such cases and we see no reason why the same can not be done in a case like this. Even if witnesses had undertaken to testify as to the amount of damages in dollars and cents which the beneficiaries in this action had sustained by the loss of their mother, such testimony could only have been the opinions or estimates of such witnesses based on the facts and circumstances of the case, and it seems to us that the jury was quite as competent to make such an estimate as the witnesses would have been." Petree v. Railroad, 29 S. C. 303.

We quote also from an opinion of the Supreme Court of the United States, in The City of Panama, 101 U. S. 453:

"When the suit is brought by the party for personal injuries, there can not be any fixed measure of compensation for the pain and anguish of body and mind, nor for the permanent injury to health and constitution, but the result must be left to turn mainly upon the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is a just compensation for the injuries inflicted."

In a death case, it was said by the Supreme Court of Pennsylvania (Pennsylvania R. R. Co. v. Keller, 67 Pa. St. 300):

"All [namely, all lives] stand on a platform common to their positions and the value of the loss to be compensated is to be estimated with a view thereto. None are without value in the eye of the law, and because there are difficulties in the way of determining the question of value, is not a good reason for denying it altogether. The sound sense of the jury must ascertain the pecuniary value by which it is to be estimated from the evidence in the case as best they may."

From the foregoing cases the principle to be deduced is. that in an action for a personal injury, if the plaintiff would

recover for lost time, he must count on that in his petition as special damages and must establish it by the best evidence the nature of the case permits.   If he is earning a fixed salary, has a fixed income, or is engaged in a business the profits of which depend on his own personal services and can be readily proven, then he must make definite and positive proof of the amount of the loss he sustained by being disqualified from pursuing his usual avocation.  But in many instances, no such definite proof is possible; for the employment which the injured party follows yields no certain, fixed income, or easily ascertainable profit; yet such a person will not be denied all redress for the loss of his time because of his inability to prove exactly what the loss was, any more than he would be deprived of compensation for his pain and anguish because those sufferings can not be measured by money.   In order to prevent an entire failure of justice, the law is forced in such instances to have recourse to the wisdom, experience and honesty of common men who are impaneled as jurors to try causes.

We by no means intend to intimate that evidence is not required in order to permit a recovery for lost time, nor that there should be any looseness of practice in this regard; but only hold the cogency of the proof required must necessarily depend on the circumstances of the case and the possibility or impossibility of attaining or approximating exactitude in making proof of the amount of damage sustained.

In the present record it is shown that the plaintiff was a young man who was making a crop of wheat with his father on a farm.  He was apparently in good health and able to work before this accident and was disabled by it for more than four weeks.   What more he could have proven to enable the jury to intelligently compensate him for his time of enforced idleness is not easy to see, nor has the appellant aided us by an apt suggestion.   Testimony might have been adduced as to the value of farm labor in that community and this is all we can think of that respondent could have shown in addition to what he did

show. Such evidence would have been competent to advise and aid the jury, but would have furnished no absolute measure of plaintiff's damage by loss of time; for he was not working for wages but for himself in an occupation where his management and judgment, as well as his labor, were needed and possessed a value.

In a case in Massachusetts (Harmon v. Old Colony R'y Co., 168 Mass. 377), where the injured party was in business for herself, it was held evidence of that kind was properly received to be taken into consideration by the jury to determine the amount of the damages to be awarded the plaintiff, if the kind of work she was doing for herself had a market value. It is not shown here that there was any market value for farm work, or the customary price paid for it, in the neighborhood where plaintiff lived; but we think enough was shown to enable the jury to estimate with approximate accuracy what plaintiff's lost time was worth to him; and only approximate accuracy was obtainable, for he was cropping on shares and his profits from the venture were subject to many vicissitudes. To hold that the amount of damages awarded by the jury with such evidence before them was wholly speculative or conjectural, would be, it seems to us, an unreasonable ruling; for it is matter of common knowledge that average jurors in countries where agricultural pursuits are followed, have a fair general opinion of the loss sustained by a farmer being laid up for a month or more, and that they possess such information without being enlightened by expert testimony, as the experts themselves would have to be gathered from the same class of men that usually constitute the juries, as was said in Petrie v. Railroad, 29 S. C. 303. There are certain employments and avocations so extensively followed and so intimately blended with the customary life of our people and with every one's experiences, and certain matters of such common and universal knowledge, that the law wisely declines to exact special proof of them, deeming it expedient to trust rather to the general sources of

Mabrey v. Gravel Road Co.

information which all men have access to and by which they are presumed to be informed, since exact proof is unobtainable in any event. How could any witness do more than express an opinion based on all the facts in the case, concerning the damage sustained by plaintiff by being forced to lay off for four weeks from the oversight, labor and management of putting in his crop of wheat? And such expert testimony would only be advisory if introduced, the jury being finally left to their common knowledge and best judgment. We confine our observations to this case and its peculiar circumstances, particularly the fact that the business of the plaintiff was of a kind which renders it impossible to measure precisely his loss from being disabled during four weeks.

On the precise question we are considering, namely, the evidence required to justify a court in submitting to a jury as an element of damages sustained by a plaintiff in an accident case, the time lost on account of his injury, the Supreme Court of Illinois upheld a charge by a trial court, that it was not necessary that any witness should have expressed an opinion as to the amount of the loss; but that the jury might themselves make an estimate from the facts proven, saying:

"In this, as in all other cases, it was proper for the jury to exercise their own judgment upon the facts in proof by connecting them with some knowledge and experience which they are supposed to possess in common with the generality of mankind." City of Chicago v. Mayor, 18 Ill. 349.

That ruling was followed and approved in Ill. Cent. R'y Co. v. Read, 37 Ill. 484, and in Fisher v. Jansen, 128 Ill. 549.

It is doubtless necessary to make definite proof of the value of lost time when it can be done and it is proper and the better practice to introduce opinion evidence along with the facts, where it can not be; but we think there was not such a total lack of evidence to guide the jury in the present instance as would warrant us in reversing the judgment because the jury

were told in the instruction quoted to take into consideration plaintiff's loss of time in estimating the damage sustained by him.    Murray v. Railroad, supra.

Beyond doubt, the plaintiff was entitled to nominal damages in any event, for his lost time, and the insertion of that item as one of the elements of damage, left the instruction correct in its general scope.    If appellant deemed that plaintiff's recovery on account of it should have been limited to nominal damages, an instruction to that effect could have been asked, and respectable authorities hold should have been asked, if the defendant wished to save the point for review.    Feeny v. Railroad, 116 N. Y. 375; Seitz v. Railroad, 32 N. Y. St. Rep. 56. Such seems to have been the view taken by our Supreme Court in Browning v. Railroad, 124 Mo. 55, where an instruction on the measure of damages was commented on in this wise:

"The instruction is not erroneous in its general scope; and if, in the opinion of counsel for defendant, it was likely to be misunderstood by the jury, it was the duty of the counsel to ask the modifications and explanations, in an instruction embodying its views."

The verdict in this case was a moderate one, considering the extent of the harm suffered by the plaintiff, as the jury only awarded him six hundred dollars, and there is no ground for the contention made by the appellant that the award was excessive.

.Respondent offers to remit the sum of fifty-eight dollars and seventy-five cents from the judgment, because his pleading was not in shape to permit proof of certain expenses amounting to that sum; this offer is accepted and the judgment reduced to five hundred and forty-one dollars and twenty-five cents, and with that modification is affirmed.    *Bland, P. J.,* and *Barclay, J.,* concur.