FRANK JENNINGS, Respondent, v. BELL J. APPLEMAN, Appellant.

St. Louis Court of Appeals, July 15, 1911.

1. APPELLATE PRACTICE: Incompetent Evidence: Harmless Error. The reception of incompetent evidence will not operate to reverse the judgment, where the trial court sustained an objection to such evidence and ordered it stricken from the record.

2. ASSAULT AND BATTERY: Evidence: Incompetent Evidence. In an action for assault and battery, evidence that defendant applied an ugly and vicious epithet to the wife of plaintiff was incompetent.

3. ————: Punitive Damages: Malice: Instructions. In an action for assault and battery, in which it appeared that plaintiff was knocked down with a club and severely beaten by defendant, an instruction that, if the jury found the injuries were "willfully" inflicted, they might assess as punitive damages a further sum, which would be a warning to defendant, was not objectionable for not requiring a finding of express malice before awarding punitive damages; the word "willfully" implying that the battery was intentional, which, under the facts of the case, necessarily included a finding that it was malicious.

4. ————: "Malice": Definition. The term "malice" imports, according to its legal significance, no more than that the act is willful or intentional.

5. ————: Evidence: Epithet. In an action for assault committed after defendant had paid plaintiff to procure a release of his hogs which had been impounded by plaintiff, evidence of epithets used by him concerning plaintiff the day before the assault, while he was seeking advice as to recovering possession of the hogs, was admissible to show his state of mind.

6. DAMAGES: Loss of Time: No Evidence: Instructions: Limting Instruction. In an action for damages for assault, in which plaintiff testified that he was a farmer and had to work for a living, and that, as result of the assault, he was incapacitated from work for nine months, it was not reversible error, in view of the fact that the verdict for $500 included not only an award for loss of time but damages for medical expenses incurred and suffering endured, to submit loss of time as an element of plaintiff's damage, although the value of his time was not directly proven, since the jury could infer its reasonable value from the

facts and circumstances in evidence; and besides, as plaintiff was beyond question entitled to nominal damages for loss of time, the instruction was proper in its general scope, and is not to be condemned as reversible error in the absence of a request by defendant for an instruction limiting the recovery on this item to nominal damages.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*Robertson & Robertson* for appellant.

(1) The evidence of plaintiff's attorney, Bruton, was inadmissible. It related to remarks made by the defendant as against the plaintiff the morning of the 15th of September, the forenoon of the day when the difficulty occurred. Evidence of threats in a case of assault is admissible on the ground that it may show who was the aggressor. State v. McNally, 87 Mo. 644. But in this case the language did not constitute threats, and plaintiff admitted that he was the aggressor; and that fact had been established when witness Bruton testified. Besides, the testimony of statements made by defendant was too remote. Coxe v. Whitney, 9 Mo. 531; Murray v. Boyne, 52 Mo. 472. (2) The verdict is contrary to the evidence and is the result of false testimony on the part of the plaintiff, and defendant is, therefore, entitled to a new trial. It is difficult to hear or to read plaintiff's testimony and not be satisfied that the claim made by him at the trial that he was unable to protect himself and that the defendant had beat him after he was in this condition is false; and being false, it is ground for a new trial. Sec. 2022, R. S. 1909; 14 Ency. Plead. and Prac. 739; Bank v. Railroad, 61 Iowa 700; Cleslie v. Ferichs, 95 Iowa 83; Rickroad v. Martin, 43 Mo. App. 597. (3) The testimony given by Curtis Jennings as to what occurred after

the trouble when his mother came upon the ground was inadmissible. Corbett v. R. R., 26 Mo. App. 621; State v. Snell, 78 Mo. 240; State v. Brown, 64 Mo. 367; State v. Taylor, 118 Mo. 153. (4) Plaintiff's instruction No. 4 as to punitive damages was error. The second clause of that instruction makes the defendant liable for punitive damages for self-defense. It ignores all the requirements for punitive damages. It told the jury they could allow such damages if the injuries were "willfully inflicted." So then, if the defendant in resisting plaintiff's assault with a club, struck intentionally or "willfully," he would be liable for punitive damages. "Willfully" used in its ordinary sense means intentionally or voluntarily or controlled by one's will. The word "willful," having been used in its ordinary sense the jury would so apply it. State v. Harkins, 100 Mo. 666. But in law it means "intentionally," not "accidentally." State v. Jones, 64 Mo. 393. The instruction leaves out of the case the elements of wantonness and malice. O'Donnel v. Transit Co., 107 Mo. App. 34; Yowell v. Vaughn, 85 Mo. App. 206; Nicholson v. Rogers, 129 Mo. 136. (5) The first clause of plaintiff's instruction No. 4 in allowing him to recover for loss of time was error because no evidence whatever of the value of the lost time was given. The jury were left to guess as to the value of the lost time. Parsons v. Railroad, 94 Mo. 286; Pritchard v. Hewitt, 91 Mo. 547; Evans v. City of Joplin, 76 Mo. App. 20; Madison v. Ry., 60 Mo. App. 599; Impkamp v. Transit Co., 108 Mo. App. 655; Wellmeyer v. Transit Co., 198 Mo. 527; Mammerberg v. Railroad, 66 Mo. App. 563; O'Brien v. Loomis, 43 Mo. App. 29; Mammerman v. Railroad, 41 Mo. App. 348; Stephen v. Metzger, 95 Mo. App. 610; Paquin v. R. R., 90 Mo. App. 119; Sedgwick on Damages, sec. 181.

*Arthur Bruton, Frank H. Farris* and *Barclay, Fauntleroy & Cullen* for respondent.

(1). The court committed no error in admitting in evidence the remarks and oaths made by appellant to and of and concerning respondent on the day of the assault. These remarks are admissible to show the animus and to indicate who was the aggressor in the difficulty. (2) The credibility of the witness is for the trial court, and not the appellate tribunal, which does not see the witness on the stand and have the opportunity of observing his demeanor, and will not declare the evidence as to Mrs. Jennings. Hufford v. R. R. Co., 130 Mo. App. 645. (3) Appellant's third point is not well taken. The court struck out the only objectionable part of the evidence as to Mrs. Jennings. (4) Instruction No. 4 is correct, and a finding of the facts therein set forth entitled plaintiff to punitive damages. Goetz v. Ambs, 27 Mo. 28; McNamara v. Transit Co., 182 Mo. 676. (5) There was abundant evidence of plaintiff's lost time and its value. Mabrey v. Road Co., 92 Mo. App. 610.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of an assault and battery inflicted upon him by defendant. Plaintiff recovered and defendant prosecutes the appeal.

Both plaintiff and defendant are farmers who reside on adjoining estates. Defendant's hogs trespassed several times upon plaintiff's growing corn in the field and finally plaintiff put up the hogs and detained them for the damages done. Defendant became angered at this, passed plaintiff's house in the morning and threatened to sue him, etc., used vile language when discussing the matter, and said he would go to town and institute legal proceedings to the end of recovering his hogs forthwith. It appears that defendant advised with the justice of the peace and a lawyer and finally concluded to pay the damages. After returning from

town in the evening, defendant, in company with his son and two hired hands, went to plaintiff's home for the purpose of paying the damage and getting the hogs. The damage was agreed upon and defendant paid it, but it appears he became abusive toward plaintiff immediately thereafter. The evidence for plaintiff tends to prove that after the claim for the damage by the hogs was settled and the hogs turned out of the barn, defendant commenced to curse and abuse him, called him vile names and said he would break his head if he ever put up his hogs again, etc. While defendant was so conducting himself, plaintiff ordered him to leave the premises immediately and picked up a club from the ground. Defendant thereupon "squared around" toward plaintiff, put his hand in his pocket and advanced toward plaintiff, who was about fifteen paces away. Plaintiff advanced toward defendant, too, with the club in his hand and continued to command him to leave the premises. Defendant was in great anger and approached plaintiff, uttering vile oaths. When the parties came near each other, each struck at the other, but defendant took the club from plaintiff, and, it is said, not only felled him to the ground but beat him with great force and violence. Indeed, the proof is that, after defendant had knocked plaintiff down, he continued the battery with such force and violence as to render plaintiff unconscious for as much as ten minutes. As a result of the beating, plaintiff received a broken nose, a large gash on his forehead, besides a large knot on his face. Plaintiff's injuries were such as to entirely disable him from attending to his duties on the farm from the 15th of September until the following June.

For defendant, the evidence tends to prove that, though he thus unmercifully pummeled plaintiff, he did so in self defense. Defendant insists that he was in the act of leaving plaintiff's premises in a peaceable manner when plaintiff followed and assaulted him

with a club. Plaintiff's son gave evidence to the effect that, while his father was prostrate on the ground, his mother came running from the house, demanding defendant to desist and leave the place, and that defendant applied an ugly and vicious epithet to her. It is argued the judgment should be reversed for receiving this remark of defendant in evidence, as it was clearly introduced for the purpose of inflaming the feelings of the jury. There can be no doubt that the epithet so applied to plaintiff's wife was incompetent, but the argument avails defendant nothing here, for it appears the court sustained his objection thereto and ordered it stricken from the record.

The jury allowed plaintiff a recovery of $500 compensatory damages and $50 as smart money. The instruction on the measure of damages is as follows:

"If you find for plaintiff you will assess his compensatory damages at such sum as will compensate plaintiff for his injuries and physical and mental suffering if any caused by said injuries together with his loss of time if any occasioned by said injuries.

"And if you find the injuries were willfully inflicted you may assess a further sum by way of punitive damages and you may assess his punitive damages at such sum as in your judgment will be a warning to defendant not to commit similar acts."

This instruction is complained of in that it authorized a recovery for punitive damages without requiring the jury to find express malice. The word "willful" therein is said to signify no more than that plaintiff's injuries were intentionally inflicted. The identical argument has been rejected heretofore by the Supreme Court in Goetz v. Ambs, 22 Mo. 170, 171, and McNamara v. St. Louis Transit Co., 182 Mo. 676, 81 S. W. 880. Though it is usually the practice to require the jury to find malice as a predicate for punitive damages, it is said the term "malice" imports, according to its legal significance, no more than that

159 App—2

the act is willful or intentional. Therefore, when the word "malice" is used to qualify the character of a trespass, it is only employed to the end of distinguishing it from that class of injuries which one person may inflict upon another without the intention to do harm but for which he is responsible because the act is not unavoidable, as in negligent torts. The word "willful," of course, implies that the act was intentionally done, and it goes without saying that if such a battery as that involved here was willful and intentional, it was malicious as well.

Plaintiff proved by one witness that defendant made abusive remarks about him during the day before the battery took place in the evening. These remarks were made while defendant was discussing the matter of plaintiff having taken up his hogs *damage feasant* and during the time he was seeking advice with respect to recovering possession thereof. The remarks referred to did not constitute threats against plaintiff but were vile and vicious epithets spoken of and concerning him. It is argued that, though threats made recently before an assault may be shown in evidence, such epithets are incompetent against a defendant who subsequently assaults and beats the party of whom the epithets were spoken. We are not so persuaded, for it was competent to prove these epithets to the end of showing the state of mind of defendant and his animus, on the same principle that threatening language used by a defendant shortly before committing a homicide, indicating an intent to take life but not referring expressly to any particular person, may be considered. [See Benedict v. State, 14 Wis. 423; Kelley's Criminal Law, sec. 248.]

The evidence tends to prove that plaintiff was so severely injured by the unnecessary force which defendant employed in beating him after he was prostrate on the ground and unconscious that he was unable to attend to his duties on the farm for nine

months thereafter, but there is no direct evidence in the record as to the value of plaintiff's time so lost. The proof is, that he was a farmer with a family of five children, and plaintiff testified that he was required to work all the time to make a living for his family. As an element of damage, the court submitted to the jury the matter of the loss of time, if any, which plaintiff suffered in consequence of the injuries received. It is argued this was error because there was no direct proof as to the value of plaintiff's time so lost. It is unnecessary to discuss this matter at length, for the case of Mabrey v. Gravel Road Co., 92 Mo. App. 596, is directly in point and the subject is fully reviewed therein. In that case, as in this one, plaintiff was a farmer who had suffered an injury which incapacitated him for some time from attending to his duties as such and there was no proof as to the value of such time. The court nevertheless sustained an instruction which submitted the matter of loss of time to the jury as here. Among other things, it is said in that case that beyond question plaintiff was entitled to nominal damages for his loss of time and the instruction was therefore proper enough in its general scope as was said in Browning v. Wabash, etc. R. Co., 124 Mo. 55, 27 S. W. 644. In view of this fact, the judgment should not be reversed when there were facts and circumstances in the case, as here, from which the jury of practical men might infer the reasonable value of such time. As the instruction was proper in its general scope, it should, therefore, not be condemned as reversible error, in the circumstances of the particular case; for, if appellant deemed that plaintiff's recovery on account of loss of time should have been limited to nominal damages, an instruction to that effect should have been asked by it, and such was not done. [See Mabrey v. Gravel Road Co., 92 Mo. App. 596, 610.] Especially is the doctrine of that case relevant here, when it appears the entire

recovery as compensatory damages was only $500, which included not only loss of time but medical expenses and cost of medicine, which were shown, besides suffering, pain, etc.

We have examined the instructions, those given for and refused to defendant. Though the instructions for plaintiff are somewhat abstract, each and all of them are sound in doctrine, and the jury could not have been misled thereby. When plaintiff's instructions are considered in connection with those given for defendant, it appears the issues were fully and fairly presented to the jury. The court did not err in modifying defendant's instruction. The case was fairly tried and the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.