The Chicago, Rock Island and Pacific Railway Company, and S. H. H. Clark et al., Receivers of The Union Pacific Railway Company, v. B. F. Posten.

**No. 10597.**

1. Railway Using Another's Track — *under contract for joint use, liable, for negligence of employees operating its train, to passengers on other company's train.* Under the terms of the articles of agreement made on the seventeenth of March, 1887, between the Union Pacific Railway Company and the Chicago, Kansas & Nebraska Railway Compay, for the joint use of the track of the former between Topeka and Kansas City, the train hands in charge of a train belonging to the Chicago, Rock Island & Pacific Railway Company, successor of the latter Company,

29—59 KAN.

while on the Union Pacific track, are to be deemed the employees of the Chicago, Rock Island & Pacific Company, and the latter company and its assigns are liable for injuries to passengers on a train of the former for injuries caused by the negligence of the employees in charge of a train of the latter.

2. DAMAGES FOR PERSONAL INJURY — *evidence proper of character, extent, and profits of ordinary personal business, which injury prevented plaintiff from transacting but not of speculative profits or profits on invested capital.* On the trial of an action to recover damages for personal injuries preventing the plaintiff from transacting his ordinary business, evidence of the character and extent of such business, to which he devoted his personal attention, and of the profits derived therefrom, may be given at the trial, but speculative profits and profits on invested capital are not recoverable as damages.

3. LIMITED LIABILITY CLAUSE IN STOCK-PASS—*issued by railway company or receiver, void unless authorized by Railroad Commissioners.* An attempt of a railway company, or of receivers operating its property, to limit, without an order of the Board of Railroad Commissioners, its common law liability for injuries to a passenger resulting from the negligence of its employees, is prohibited by section 17, chapter 69, of the General Statutes of 1897; and a provision in a stock-pass, attempting to limit such liability to $1000, is invalid.

Error from Cloud District Court. F. W. Sturges, Judge. Opinion filed June 11, 1898. *Affirmed.*

*M. A. Low* and *W. F. Evans*, for the C. R. I. & P. Rly. Co. *A. L. Williams, N. H. Loomis* and *R. W. Blair*, for Receivers of the U. P. Rly. Co.

*J. W. Sheafor*, for defendant in error.

ALLEN, J. The plaintiff was injured in the same collision considered in the preceding case of *C. R. I. & P. Rly. Co. et al. v. Lissa Martin, Administratrix.* Plaintiff recovered judgment in the District Court against both defendants for $8,000. The findings of the jury, upon all essential questions of fact relating to the cause of the collision, are substantially the same as in the preceding case, and it is not deemed

necessary to again recite them. In this case, however, the contract under which the trains of the Rock Island Company were operated over the Union Pacific tracks between Topeka and Kansas City was put in evidence. Counsel for the Rock Island Company again argue in the brief, with great earnestness and at length, that the trains of their company, while on the Union Pacific tracks, are wholly under the control of the Receivers, and that they alone are liable for accidents resulting from the mismanagement of trains.

The first article of the contract provides for connecting the tracks of the two companies at North Topeka, Kansas City and Armstrong, and lets to the Rock Island Company the joint use of the Union Pacific tracks between these points, with equal privileges to the engines and trains of both roads thereon. The second article fixes the rental to be paid, which is made up partly from percentage on the investment, partly from the taxes and expenses in repairing the property and "a proportional share of the expenses actually incurred in paying reasonable salaries to switchmen, telegraph operators, train dispatchers, and such other employees as may be employed in the performance of the duties incident to the joint use and occupation of said railway, as well as a like share of expenses for water supply." In the third article provision is made excluding the Rock Island Company from local business to and from intermediate points, and providing for joint schedules for the movement of trains, and for rules and regulations for the operation thereof to be made by the Union Pacific for the government of trains of both companies. It is also provided that "all trains shall move under and in accordance with the orders of the superintendent, or train dispatcher, of the party of the first part, who shall as nearly as may be practicable secure equality

of right and privilege to all trains of the same class.'' The fifth clause of the third article reads :

''Each party shall be liable as well to the other as to all third persons for all injuries and damage done by the running of its trains or by the misconduct, carelessness or neglect of its employees ; and in case of collision between the trains of the two parties, the one in fault shall sustain and pay all damages, or if neither is at fault each shall bear its own loss and damage.''

From these provisions, as well as from the general context of the agreement, it is perfectly clear that the Rock Island is responsible for the conduct of its employees in the operation of its trains over the Union Pacific tracks, and that the management of Rock Island trains by employees of the Union Pacific Company is confined to orders and regulations in reference to their movements. For keeping the tracks and other Union Pacific property in repair, the Union Pacific Company is primarily responsible, but, for the conduct, skill and diligence of the trainmen in the operation of the trains of the Rock Island Company, it clearly is answerable both to its own passengers and to all others affected thereby. The negligence for which the Rock Island was held liable was the negligence of the engineer and other trainmen employed by it and in charge of its train. We are not called on to consider any question concerning its liability for the negligence or mismanagement of train dispatchers, telegraph operators, switchmen, or other persons employed by the Union Pacific, but whose duties relate to the trains of both companies.

1. Railway company using another's track liable to other's passengers.

We find no fault in the ninth instruction. It certainly states, in substantially the usual form, the correct measure of the plaintiff's recovery in case a verdict should be rendered in his favor. The criticism

of counsel, however, is not so much of the instruction itself as of the evidence on which it was based. The claim is that, as to earning capacity, no competent evidence was offered, but that, on the contrary, incompetent evidence of the plaintiff's profits in his business was introduced over the defendant's objection. The plaintiff himself testified that he was a farmer, feeder, and shipper of stock, and that in the year 1892 his profits were about two thousand dollars, and in 1893 about four thousand dollars; that that included the two years previous to the accident, and that since then he had not been able to attend to that business, nor business of any kind. It is said that this income, being derived from invested capital as well as the personal attention of the plaintiff, did not furnish a proper measure of damages; that profits of the kind realized were speculative, and that while profits might be made in one year, losses might be sustained in another. The contention is sound so far as it relates to the rule by which the plaintiff's damages are to be measured, but it is not sound as to the proposition that testimony with reference to the plaintiff's employment and the nature and character of his business, and whether it is profitable or otherwise may not be admitted in evidence. Certainly evidence as to earnings in cases of this kind is not necessarily confined to wages. It is not alone wage-earners whose time is valuable, and who may recover damages for injuries resulting in the loss of it. In order that the jury may intelligently estimate the loss the plaintiff has sustained, it is necessary that they should be informed with reference to his business affairs, and while they may not, as compensation for the loss of his time, include speculative profits, or profits on invested capital, it is for them to say what loss has resulted to his

*2. Evidence of profits, etc., of business admissible to prove damages.*

business because of his being incapacitated from attending to it, and to award him as damages the value of his time and labor to himself in the transaction of his own business. This is the same compensation, and for precisely the same reasons, that a clerk or agent doing the same work for wages might recover for his loss. In Sutherland on Damages, vol. 3, page 261, it is said :

"Evidence of the loss sustained by the plaintiff in his business in consequence of the injury received, is proper, not as furnishing the measure of damages, but to aid the jury in estimating them ; and for this purpose the nature of such business, its extent, and the importance of his personal oversight and superintendence in conducting it, may be shown."

This view of the law is sustained in the following cases : *Kinney v. Crocker*, 18 Wis. 80 ; *Stafford v. The City of Oskaloosa*, 64 Ia. 251 ; *City of Ripon v. Bittel*, 30 Wis. 614 ; *Wade v. Leroy*, 20 How. (U. S.) 34.

The plaintiff in this case was riding on a stock-pass, similar to that of Martin, discussed in the preceding case. In this case, Posten is plaintiff, and the question is presented whether the liability is limited by the terms of the pass, which provides that in no case shall the liability of the Company exceed one thousand dollars. This is an attempt to restrict the liability of the Receivers of the Railway Company by contract, without the sanction of an order of the Board of Railroad Commissioners. In the case of *Rouse v. Harry* ( 55 Kan. 589, 40 Pac. 1007 ), it was held, that the liability of receivers operating a railroad is to be determined by the same rules as those applicable to the company. In the case of *St. Louis & S. F. Ry. Co. v. Sherlock*, (ante, p. 23, 51 Pac. 899 ), it was held :

*3. Limited liability of stock-pass void, unless.*

"A stipulation in a contract for the shipment of live

stock, limiting the amount for which the railroad company shall be liable in case of loss or injury, made without the permission or order of the Board of Railroad Commissioners, is invalid and cannot be enforced.''

This decision was based on section 17, chapter 69, General Statutes of 1897, which provides : '' No railroad company shall be permitted except as otherwise provided by regulation or order of the board to change or limit its common-law liability as a common carrier.'' At common law, common carriers are liable to persons injured through their negligence for the damages so occasioned. The provision incorporated into this stock-pass is an attempt to relieve the Company from the major part of this common-law liability, and falls within the prohibition of the statute.

Most of the other questions discussed in the brief have been considered and disposed of in the Martin case. The others appear of minor importance, and, while all of them have been examined, we find nothing warranting a reversal of the judgment. It is therefore affirmed.