CASE 44.—ACTION BY T. GRANT SLAUGHTER AGAINST W. H. GREGORY FOR PERSONAL INJURIES BY AN AUTOMOBILE.—January 18.

## Gregory v. Slaughter

Appeal from Jefferson Circuit Court, C. P. Branch (Second Division).

THOMAS R. GORDON, Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

1. Municipal Corporations—Streets—Use as Highway—Automobile Accident—Injuries to Pedestrian.—Plaintiff was struck by defendant's automobile as plaintiff was following a street car which was about to stop on the opposite side of a street to permit him to board it. Defendant was driving his automobile at from eight to ten miles an hour on one of the principal thoroughfares of the city. He was unable to see

Gregory v. Slaughter.

the crossing as he approached it because the street car was between him and the crossing, and, instead of stopping his automobile until the car passed, he merely changed his direction, so as to go around the passing car, when he was brought face to face with plaintiff at a distance too short to prevent a collision. Held, that defendant was grossly negligent, rendering him liable for plaintiff's injuries.

2.  Damages—Verdict—Excessiveness.—Plaintiff, who was struck by an automobile had his hand badly cut and one of his fingers broken and was severely bruised. He was confined to his home for several weeks, and his hand was permanently injured. Held, that a verdict of $2,500 was not excessive.

3.  Same—Loss of Time.—In an action for personal injuries to an insurance solicitor, the fact that plaintiff's remuneration in his business was contingent, and depended on the number of risks he succeeded in writing during the year, did not preclude an allowance for loss of time because of his injuries, to be determined on a basis of his average earnings.

HELM, BRUCE & HELM for appellant.

Appellant, Mr. W. H. Gregory, is a victim of the prejudice against automobiles. That such a prejudice exists we suppose will hardly be disputed. It was certainly shown in the case at bar.

If this injury had occurred in this way and with these results by reason of a man being struck by an ordinary wagon or buggy, we think we can say without any doubt that, considering the character of the injuries and all the circumstances, no jury would have given the plaintiff over $200 or $300. Possibly some jury might have been worked up to $500. The jury in the case at bar rendered a verdict against Mr. Gregory, by reason of his being in an automobile, in the sum of $2,500.

We submit that this verdict was grossly excessive, and was manifestly given under the influence of passion and prejudice against automobiles.

Furthermore we submit that the court erred in allowing the plaintiff to testify that the loss of his business by reason of his injuries was $1,000, which, he said in effect, was the amount of commissions he believed he would have earned, and which he did not earn by reason of his injuries. This testimony was objected to, and a motion made to exclude it, but the court let the testimony in.

Gregory v. Slaughter.

## AUTHORITIES CITED.

1. Excessive damages.   (L. & N. R. R. Co. v. Law, 14 Ky. Law Rep., 850; N. N. & M. V. Co. v. Walker, 14 Ky. Law Rep., 175; Louisville Railway Co. v. O'Mara, 25 Ky. Law Rep., 819.)

2. Loss of Profits.   (L. & N. R. R. Co. v. Hall, 24 Ky. Law Rep., 2487, 2492; L. & N. R. R. Co. v. Logsdon, 24 Ky. Law Rep., 1566; Howe Machine Co. v. Bryson, 44 Iowa, 159; Pollock & Co. v. Gantt, 69 Ala., 377; Lewis v. Atlas Mutual Life Ins. Co., 61 Mo., 534; Cincinnati Gas. Co. v. Western Siemens Co., 152 U. S., 200; Hair v. Barnes, 26 Ill. App., 583; Stern v. Risenheim, 67 Md., 507; Washburn v. Hubbard, 6 Lansing, 11; Smith v. Gentry, 20 Ky. Law Rep., 171; Hahn v. Horstman, 12 Bush, 257; Epenbaugh v. Gooch, 15 Ky. Law Rep., 576; Carsey v. Farmer, 25 Ky. Law Rep., 1965; Smith v. Western Union, 83 Ky., 118.

CHAS. H. SHEILD, attorney for appellee.

1. It is contended that the verdict is excessive.   The only evidence as to the amount of the injury sustained by Mr. Slaughter is the fact that he has paid doctors' bills to the extent of $60.00, that he has had clothes ruined to the extent of $30.00, that he has lost in his business $1,000.00, that he has suffered intense physical agony for over six months, was confined to his bed and to his house for several weeks in utter pain and suffering, and that he has left, as a permanent memorial of this accident, a right hand so torn, mangled and distorted, that one finger stands permanently stiff and immovable and the tendons so distorted and torn and misplaced that the balance of his hand can only be half closed, the physical power of the hand gone and gone forever, utterly useless for any manual labor, even for the lifting of the ordinary burdens that a gentleman would be called upon to lift; with free use only of two fingers and a thumb, enabling him still to write, but useless practically in all other respects.

2. The earnings of Mr. Slaughter are from his personal labor and skill. It is not profits out of the business nor speculative profits for a breach of contract, but which, as he says, judging by his past experience of his earnings from his personal labor by reason of this injury he lost "the value of his time," and the "value of the time lost" is fixed by the Kentucky authorities as one of the elements of his damage, and therefore evidence as to the value of that lost time, was admissible and competent.

OPINION OF THE COURT BY JUDGE BARKER—Affirming..

The automobile which W. H. Gregory was driving through the streets of Louisville collided with T. Grant Slaughter, at the corner of Broadway and Brook streets, inflicting upon him painful and permanent physical injuries, to recover damages for which this action was instituted, with the result that the jury returned a verdict in favor of plaintiff for the sum of $2,500. The defendant's motion for a new trial being overruled, he is here on appeal.

The substantial facts are these: Broadway street, at the place of the accident, runs east and west. Brook street, at the same point, runs north and south. T. Grant Slaughter, just before the accident, was at the northeast corner of Brook and Broadway streets, and desired to board a street car which was running on Brook street, going south. A regulation of the street car company forbids the stopping of its cars within the intersection of streets. The car in question, therefore, could only stop to receive and dis charge passengers after it crossed to the south side of Broadway. Slaughter, in order to catch the car when it stopped, ran across Broadway, probably keeping up with the car, which was moving slowly. At this time the appellant, Gregory, was driving his automobile along the south side of Broadway, going east. He did not see Slaughter, nor could Slaughter see the automobile coming, because the street car was between them. The rate of speed at which the automobile was being driven is disputed. The witnesses for the plaintiff (appellee) describe it as going at a terrific rate of speed; the appellant, who claims to be an experienced automobilist, states he was travel-

ing at the rate of from eight to ten miles an hour.   It
is not seriously disputed that the automobile came up
so close to the street car as to create the impression
that there was danger of a collision between the two;
but, before this could take place, by the use of the
steering lever, appellant veered his automobile around
the car, where he found Slaughter directly in his
path, and within six feet of him.   He claims (and it
may be conceded to be true) that after he saw appellee
he could not, by any sort of diligence, stop his automo-·
bile in time to prevent the collision and the infliction
upon appellee of the injury complained of.

A careful reading of the evidence in this case con-
vinces us that the appellant was driving his car at a
high rate of speed, although, as we see it, appellant's
own estimate of the rate may be accepted as true.
His automobile weighed 2,300 pounds.   He states it
was going at the rate of eight to ten miles an hour.
He was on one of the principal thoroughfares of a
great city, and approaching a crossing where it was
at least reasonable to expect pedestrians to be.   He
could not see this crossing for the reason that the
street car was between him and it, and thus obscured
his vision.   Instead of stopping his automobile until
the car passed and he could see whether there were
pedestrians    on    the    crossing    beyond,    he    simply
changed his direction so as to go around the passing
car, and by his own act was brought face to face with
the appellee at a distance too short to prevent the
collision at the rate he was moving.   This was, in
itself, gross negligence to the verge of recklessness.
In practical result there was no difference between
what he did and if he had shut his eyes and driven his
automobile over the street crossing without observing
whether any one was in his way or not.   So we con-
clude that, accepting appellant's own evidence as a

correct statement of the facts, he was guilty of gross
negligence in inflicting the injury which occurred to
appellee.

It is urgently insisted, as a cause for reversal, that
the verdict is excessive. The evidence as to the injury
received by appellee shows that he was knocked down
and dragged, partly clinging to the car and partly
under it, for a distance of 10 or 15 feet. His hand was
badly cut, one of his fingers broken, and he was
severely bruised on various parts of his body, espe-
cially upon one of his legs. He was confined to his
home several weeks. His hand is permanently injured;
it being so stiff that he cannot close it entirely, al-
though he can still write with it. Appellee's injury
is far greater than the mere breaking, or the loss, of
a finger. The whole hand is permanently injured,
although the loss of its use is only partial. The cases
relied on by appellant as showing that the verdict in
this case is excessive did not involve the permanent
injury to the whole hand, but were confined to the
loss of one finger, or the mere breaking of a finger;
nor was there any other injury inflicted. Taking all
the facts of this case into consideration—the pain,
both mental and physical, which appellee must have
suffered, together with the partial loss of the use of
his whole hand, and the loss in his business, to be
hereafter discussed—we do not think the verdict was
excessive.

Appellant also complains that the court erred in
allowing incompetent evidence as a basis for a com-
putation of the value of appellee's loss of time. Ap-
pellee is an insurance solicitor, whose remuneration
depends upon the writing of insurance risks, and is
based upon the amount of new business he secures.
He was allowed by the court to state that his business
loss during the time he was confined to his home

amounted to $1,000. Upon cross-examination it was developed that his earning money was entirely con-tingent upon his writing insurance risks, and there-upon appellant moved the court to exclude from the jury all the evidence relative to the loss of business, upon the ground that the profits of the business were entirely speculative, and therefore could not be con-sidered as a legitimate element of damages. It is con-ceded by appellant that the plaintiff was entitled to recover for the value of his lost time occasioned by the accident, provided it resulted from his (appel-lant's) negligence. But he urges that there is a difference between the loss of business profits and the loss of time, and it must be conceded that he pro-duces high authority for this position, although the cases upon which he relies with most confidence in-volved the loss of profits by reason of breaches of contract.

Shearman and Redfield, in their work on Negli-gence, section 739, say: "The liability of a defendant in an action upon negligence is broader than in an action for mere breach of contract." In the case of Louisville & Nashville Railroad Co. v. Reynolds, 71 S. W. 516, 24 Ky. Law Rep. 1402, the right to recover damages arising from loss of business in personal injury cases caused by tortious negligence was clearly recognized. In that case the plaintiff was a specialist physician, and was allowed to testify of his loss of business and possible profits by not being at his office during the time he was hurt. It was held that this was error, not because incompetent generally, but because the petition did not allege special damages. In this case the petition sufficiently alleges the special damages, being evidently prepared in the light of the Reynolds case.

In the case of City of Logansport v. Justice, 74

Ind. 378, 39 Am. Rep. 79, which was an action for damages for personal injuries caused by negligence, it was said on the subject in hand: "It is also claimed that the court erred in permitting the plaintiff to make proof concerning his professional earnings before his injury. In substance, the plaintiff is permitted to prove what his professional earnings had been per year for five years, and how much his business had fallen off during six months succeeding his injury. This was permitted to go to the jury under an allegation in the complaint that the plaintiff was damaged in his business, and asking a recovery for the same. The damages are for a personal injury. This evidence was inadmissible in estimating the value of time lost, but not as a basis of damages. Taken in connection with the demand of the complaint and the instruction of the court, the evidence was clearly admitted as a basis of damages. It has been held that similar evidence is competent, not as a basis of damages, but as a guide to the jury, to aid them in the exercise of their discretion."

In the case of New Jersey Express Co. v. Nichols, 33 N. J. Law, 436, 97 Am. Dec., 722, the court said: "The plaintiff, on his examination in chief, after proving that his business was that of an architect, was asked the following question: 'What was your average annual profits in your business?' To which he answered: 'The average was about $2,500, that is, the average income.' When the deposition was offered to be read in evidence, the defendant's counsel objected to the reading of this question and answer, for the reason that, if read in evidence, and allowed by the court to be considered by the jury, it would tend to lead the jury to an indefinite inquiry, which would be contrary to law. The court overruled the objection, and permitted the question and answer to be read to

the jury.   In actions founded on contract, evidence of the loss of profits resulting from non-performance has, in some instances, been rejected as too speculative and uncertain to be made the means of arriving at compensation as the measure of damages.   But in actions of tort, where the quantum of damages is very much within the discretion of the jury, evidence of the nature and extent of the plaintiff's business, and the general rate of profit he has realized therefrom, which has been interrupted by the defendant's wrongful act, is properly received, not on the ground of its furnishing a measure of damages to be adopted by the jury, but to be taken into consideration by the jury, to guide them in the exercise of that discretion which, to a certain extent, is always vested in the jury.''

In the case of Allison v. Chandler, 11 Mich. 542, it was said: ''But, whatever may be the rule in actions upon contract, we think a more liberal rule in regard to damages for profits lost should prevail in actions purely of tort, excepting perhaps the action of trover. Not that they should be allowed in all cases without distinction; for there are some cases where they might, in their nature, be too entirely remote, speculative, or contingent, to form any reliable basis for a probable opinion.   And perhaps the decisions which have  excluded the anticipated  profits of a voyage broken up by illegal capture, or collision, may be properly justified upon this ground.  Upon this, however, we express no opinion.   But generally, in an action purely of tort, where the amount of profits lost by the injury can be shown with reasonable certainty, we think they are not only admissible in evidence, but that they constitute, thus far, a safe  measure of damages.''

We are of opinion that not only is the proposition that, in cases of tort, loss of profits from business may

be recovered as a part of the damages (proper allegation being made in the pleading), sustained by the great weight of authority, but the principle is based upon reason and justice. Why should one who has tortiously inflicted upon another a severe personal injury, which confines him to his home or bed, and necessarily takes him from his business, be heard to say that he ought not to pay anything because his victim cannot demonstrate to a mathematical certainty what his loss in profits is? If there is any uncertainty, ought not the doubt to be resolved in favor of the innocent, rather than the guilty? The rule contended for by appellant would place it out of the power of any but one receiving a fixed salary to recover for loss of business in a personal injury case. The plaintiff was an insurance solicitor, he could not tell when he would write a risk, and his profits depended entirely upon his securing risks for his company. That he would be able to secure a risk to-day or to-morrow, he could not tell, but during a long period of time he could say that he averaged a given sum. It seems to us that the evidence of what his business produced on a general average is competent for the consideration of the jury in estimating his loss. No lawyer or doctor can say that during any determinate period he would have been employed by a client or patient, yet each knows that year in and year out he makes an income approximately, during a long period of time, the same, although differing in individual years. This profit may be called uncertain, but the most prudent men habitually act upon it in the most important affairs of life. They marry and rear families, buy property, and borrow money upon the confident expectation of being able to meet the obligations growing out of these most important contracts with the incomes arising from their business. To say

that one may wrongfully inflict injury upon the person of a man whose income is dependent upon his own personality, the confidence of the public in his skill, energy, and integrity, and that the wrong-doer will not be required to make compensation for the loss of expected profits arising from the injury, would be to refuse compensation for the most serious item of damage. Indeed, this item of damage is more certain than several others whose legitimacy is conceded. Mental and physical pain—who can measure in terms of money these with any certainty of being even approximately accurate? And yet they are submitted to the jury in every case for their consideration in estimating compensatory damages. The general level of a man's income for a considerable period before the injury, while perhaps not an accurate, or even altogether satisfactory, measure of the damages, is worthy of the consideration of the jury in a case like this.

Appellant complains in his brief that he is the victime of public prejudice against automobiles. This may be true, and, if so, that prejudice is based upon the carelessness of a large number of automobilists of a character similar to that of which this record shows appellant was guilty. The owners of automobiles have the same right on the public highways as the owners of other vehicles; but, when one drives so dangerous a machine through the public thoroughfares, it is incumbent upon him to exercise corresponding care that the safety of the traveling public is not endangered thereby. When the owners of automobiles learn this, it is confidently believed that whatever prejudice may now exist against them in the public mind will entirely disappear, for the public is not usually prejudiced without cause.

Perceiving no error in the record, the judgment is affirmed.