## Illinois Central Railroad Company v. Peebles.

(Decided June 25, 1926.)

### Appeal from Carlisle Circuit Court.

1. Railroads.—Conflicting testimony as to whether railroad crossing was extrahazardous or merely ordinary country crossing held to present question for jury.

2. Railroads.—Unusually dangerous country grade crossing requires travelers and railroad to exercise care commensurate with danger.

3. Railroads.—Ordinary crossing signals required by Ky. Stats., section 786, if insufficient to warn traveler at unusually dangerous crossing, do not exonerate railroad from liability to traveler not contributorily negligent.

4. Railroads.—Evidence held to warrant finding that crossing was extrahazardous, and that railroad did not employ reasonable care for protection of travelers.

5. Railroads.—Instruction that if sounding whistle or ringing bell at unusually dangerous crossing was not sufficient it was further duty of railroad to use such "other means" as ordinarily prudent person would use held not erroneous.

6. Damages.—$2,000.00 for fracture of one of bones of pelvis and other serious injuries to woman held not excessive.

TRABUE, DOOLAN, HELM & HELM and R. V. FLETCHER for appellant.

R. M. SHELBOURNE and HOLIFIELD, GARDNER & McDONALD for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellee, Katy Peebles, was a guest in the automobile of John R. Summers as it was driven by him over

and across the tracks of the appellant railroad company at the Filmore crossing near Wickliffe, Carlisle county, on August 2, 1924, when the car was struck by a passenger train of appellant company causing the injury of appellee, Peebles, which is the basis of this action by her for damages. A jury returned a verdict in her favor for $2,000.00, and the railroad company appeals.

Many grounds are relied upon by the company for a reversal of the judgment, among them (a) there was no negligence on the part of the company, but the appellee and those with whom she was traveling were guilty of negligence resulting in her injury; (b) the evidence does not show the crossing to have been extrahazardous and it was in the country far from buildings or other obstructions, hence no extra precautionary duty was required of it; and (c) appellant company was entitled to a directed verdict in its favor, and the instructions given by the court to the jury were erroneous in several particulars. Appellee and her friends were traveling by automobile from Cairo to Wickliffe. Appellant company operates a line of railroad between these two points, and it parallels the highway. About midway between Wickliffe and East Cairo is a crossing at grade known in the record as "Filmore crossing." The country generally is level, and the railroad is upon an embankment, some twenty feet or more above the surrounding country. The highway runs on the east side of the railroad tracks from East Cairo to Filmore crossing, and there crosses the tracks and continues southward parallel with the railroad tracks, but on the west side thereof. The train which struck the automobile and injured appellee was running north at the rate of about fifty miles per hour, and it was on time. It is appellee Peebles' contention that Filmore crossing was an unusually dangerous one, made so by reason of the surrounding trees, shrubbery, weeds and other vegetation, which had grown up near and along the railroad track on the embankment so as to obstruct the view of the traveler upon the highway approaching the crossing, and much of her evidence is directed to proving that the crossing was an extrahazardous one, while the evidence for the railroad company tends to prove that the crossing was nothing more than an ordinary country crossing, free from obstructions and not extrahazardous; that there were no trees, shrubs, weeds or vegetation upon the railroad embankment which obstructed the view of the

traveler upon the highway or which cut off her view of a train approaching the crossing. It is also the contention of appellee, Peebles, that the highway at the crossing was a much frequented one both by pedestrians and persons traveling by automobile, and that it was the duty of the railroad company under such circumstances and surrounding conditions to exercise a higher degree of care at the crossing to prevent injury to travelers upon the highway. The railroad company undertakes to minimize the travel upon the highway and spiritedly challenges the correctness of appellee Peebles' contention that the crossing was extrahazardous, or that the company was under a duty to exercise added care commensurate with the extrahazardous conditions to avoid injuring persons upon the highway at the crossing. Appellee, Peebles, in substance testified that when the automobile was 140 feet from the crossing, and just as it was about to start up the grade over the railroad embankment, stopped and she and other occupants in the car looked both ways, up and down the railroad track, as far as they could see for intervening trees and vegetation and listened for the noise of an approaching train and for signals but saw no train or smoke from a train or heard any signal or noise of an approaching train, and that she and others in the car continued to look out the windows of the car to see if a train was approaching and to listen for signals and other noises of the approach of a train, but that she neither saw nor heard a train approaching nor was aware that a train was about to reach the crossing until the automobile passed inside of the right of way fence and was within two or three feet of the rails of the track when, for the first time, an alarm signal was given by the whistle of the train approaching the crossing and only about fifty feet therefrom, which signal caused the driver of the automobile to suddenly stop his car before it went on to the tracks, and at a distance far enough away from the tracks that the engine passed the automobile without touching it, but the automobile was struck by the steps and air holes of the tender, thrown around and damaged, causing the painful injury of appellee, Peebles. She is supported in her evidence by that of Mr. Summers, the driver of the car, and other persons in the car, all testifying that they heard no signal of the approach of the train although they stopped and listened and kept a sharp lookout for trains as they went up the grade of the railroad embankment towards the crossing.

These same witnesses testified unequivocally that the railroad company had allowed the wire fence along its right of way to become covered with vines, weeds and other vegetation and the right of way along and near the crossing to become overgrown with trees and shrubs to such an extent as to obstruct the view of the traveler upon the highway looking south for on-coming trains and that a train approaching from the south could not be seen from the highway at that time by one occupying an automobile, as was appellee, until within a very few feet of the rails of the railroad track on the crossing. The engineer in charge of the train testified that he gave the statutory crossing signals fifty (50) rods back from the crossing and set the automatic bell ringer in operation, and that the bell rang continuously for fifty rods as it approached the crossing and was ringing at the time the train collided with the automobile. In this evidence he was supported by other trainmen and persons upon the train. He also testified that he could plainly see the automobile as it came along the highway and as it turned up the incline to the crossing, but he did not think the automobile was coming on to the track. The evidence given by the trainmen indicated that the crossing was not and is not an extrahazardous one, but merely an ordinary country crossing. Upon this point the evidence was in great conflict, making it a question of fact for the jury.

It is well settled in this jurisdiction that a grade crossing which is unusually dangerous by reason of obstruction to sight or hearing, even though in the country, places upon both the railroad company and the highway traveler the duty of exercising care commensurate with the danger of the crossing. L. & N. R. R. Co. v. Locker's Admr., 182 Ky. 578. At a public crossing the railroad company and the highway traveler are under mutual and reciprocal duties of exercising care to avoid giving or receiving injury, and where the crossing is extrahazardous, an increased duty devolves upon each to protect himself and the other from harm in exact proportion to the increase of the danger. Piersall, Admr. v. C. & O. R. Co., 180 Ky. 659.

The railroad company must exercise such care at an extrahazardous crossing as a reasonably prudent person under like circumstances would exercise in the operation of trains, and a traveler upon the highway where he knows of the dangerous condition attending the railroad

crossing is bound to exercise care commensurate with such dangers and if he fails to do so and as a result of his failure, is injured by a train on the crossing, he is without remedy. But if he exercise such care as a reasonably prudent person would exercise under similar circumstances in approaching an unusually dangerous crossing and is unaware of the approach of a train and is struck and injured, the railroad company will be liable. Where the crossing is dangerous by reason of obstructions cutting off the view or from any other cause, and the railroad company knows of this condition, or by the exercise of ordinary care could have known of it before the accident and it fails to exercise care commensurate with the increased danger, it must pay any damages occasioned to a traveler upon the highway who is exercising reasonable care to learn of the approach of trains and to keep out of their way. In such situation the ordinary crossing signals, such as are required under section 786, Kentucky Statutes, may not be and often are not sufficient to warn a traveler upon the public highway of the approach of trains and not, therefore, sufficient to exonerate the railroad company from blame for injury occasioned to a person on the crossing who was not guilty of contributory negligence. Other signals or precautions may be necessary in order to protect highway travelers at such a crossing, and if such extra care, signals and precautions are reasonably necessary in the prudent operation of trains over the crossing and the protection of travelers upon the highway, then the railroad company must conform to such requirements and take such care, give such signals and have such control of its engines and trains at the crossing as would be adopted and employed by reasonably prudent persons under like circumstances in the operation of railroad trains over crossings similarly surrounded. The evidence introduced by appellee was sufficient to have induced a jury to believe that the crossing was extrahazardous, that the crossing was a much traveled one, and that the railroad company in the operation of its trains over the crossing at the time of the injury did not employ that care which a reasonably prudent person operating trains under similar circumstances would have employed for the protection of travelers upon the highway at such crossing.

Appellant company complains that instruction No. 1 was erroneous in that it directed the jury that "if the

crossing was a much traveled thoroughfare, and because of its location, unusually dangerous, that the sounding of the whistle or the ringing of a bell was not sufficient, then it was the further duty of the *defendant to use such other means* to prevent injury as ordinarily prudent persons would use,'' saying that the words ''use such other means'' left it entirely to the jury to say whether ''other means'' were necessary without any limitation upon the means to be employed.   This instruction was in substance approved in L. & N. R. R. Co. v. Lucas' Admr., 30 R. 359, and is adopted and used by Hobson in his work on Instructions, page 588, as an illustration of the kind of instruction that should be given in cases like this where an accident happens at an unusually dangerous railroad crossing.   It would not, however, be proper for the court to tell the jury the different things that a railroad company might do in order to meet the necessities of the occasion where the crossing is extrahazardous, for this would unduly emphasize the precautions mentioned and might not cover all of the things which the railroad company might do with as little effort to accomplish the same result, hence it would seem that the question of whether the railroad company has adopted such means of safety as reasonably prudent persons in the operation of trains would ordinarily adopt for the protection of others under like circumstances, is as direct and certain a measure of the responsibility of the railroad company as could well be devised by a court.

Some question is made as to the excessiveness of the verdict, but this is not specially emphasized, and we do not think it could be reasonably said from the record showing that Mrs. Peebles sustained a fracture of one of the bones of the pelvis and was otherwise seriously injured, that she was over compensated by a verdict of $2,000.00.   She suffered much pain and lost considerable time and incurred doctor bills, and at the time of the trial was not fully recovered.   All these facts taken together would seem to warrant a verdict of at least $2,000.00, if she were entitled to recover at all.   The record is unusually free from error.   Both parties seem to have confined themselves in the introduction of evidence to matters relevant and competent.   While counsel for the railroad company who tried the case has since departed this life, the railroad company was ably represented by brief in this case, as was also appellee, by two excellent

briefs, with a reply brief for appellant company. The case was well practiced on both sides throughout, and we think the trial was a fair one. For the reasons indicated the judgment is affirmed.