## Chesapeake & O. Ry. Co. v. Shanks.

(Decided Sept. 24, 1935.)

ODIS W. BERTELSMAN and GALVIN & TRACY for appellant..
ARTHUR C. HALL for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appellee, Clayton Shanks, was injured when his truck was demolished by appellant's fast passenger train at a grade crossing in Campbell county called

"Ten Mile Crossing." The accident occurred during a heavy snow on February 4, 1933. The appeal is from a judgment for $958. The plaintiff established extraordinary care upon his part, without learning of the approach of the train, while the defendant proved that the whistle and bell of the engine had been blown and rung according to statutory requirements, and that the headlight was turned on because of the snowstorm.

1. A ground upon which a reversal of the judgment is asked is that there was no evidence authorizing the instruction outlining the duties of the railroad company if the jury should believe that it was an unusually dangerous crossing. To one traveling east, as was the plaintiff, the county road parallels and is adjacent to the railroad right of way. Just at the east end of a one-way, 250-foot bridge over a creek, the road turns to the left on a right angle and crosses the first rail 68 feet distant from the end of the bridge. The rails of the double track are 6½ feet higher than the road at the bridge. After crossing the track the road turns sharply to the right and continues parallel with and next to the railroad. Just off the county road as it bends sharply to the left and goes over the railroad there is a barn used as a garage. This building is on elevated ground close to the railroad right of way. It stands immediately ahead of a traveler as he crosses the bridge and as he goes around the bend onto the railroad. The plaintiff and several other witnesses, including the county engineer, testified unequivocally that the garage and the higher ground obstruct the view and prevent sight of a westbound train (which was the direction of that which struck the plaintiff) until one gets almost on the track. The railroad is practically straight, and after getting from behind the garage the view is unobstructed for a long way. Upon recall the county engineer testified, after having made some observations and measurements of the situation since his first appearance on the stand, that at the west end of the bridge (which would be approximately 300 feet from the crossing) a person in an automobile in the center of the highway could see a man's head 400 feet from the crossing down the railroad, but if he was on the right-hand side of the road or bridge, and there was another automobile at the other end of the bridge, it and the garage would obstruct the view entirely. On this occasion there was another car at the east end of the bridge waiting

the crossing by the plaintiff. After making the turn in the road and getting beyond the garage, there is no difficulty in seeing a half mile down the railroad. But it appears that an automobile would then be upon an incline so steep as to require operation in low gear.

The railroad company presented an engineer's drawing of the situation except that it did not show the location of the garage or disclose the elevation. The draftsman testified to the presence of the building, and stated that until one got to the east end of the bridge he could see down the railroad a half mile, and after getting to the east end he could see 493 feet east. With his car 20 feet from the eastbound track, an occupant can see down the railroad more than a half mile.

All of these observations were made on a clear day and not when it was snowing. The plat made by the county engineer is not in the record, and he and other witnesses pointed out locations on it and upon the defendant's plat so as to give the jury and trial court the benefit of descriptions of the crossing of which we are denied. While this was only a county road and the community could hardly be called a populous one, it was not sparsely settled. It seems to us that the evidence was sufficient to authorize submission to the jury of the question whether this was an unusually dangerous crossing. Southern Railway Co. v. Thacker's Adm'x, 156 Ky. 483, 161 S. W. 236; Louisville & N. Railroad Co. v. Treanor's Adm'r, 179 Ky. 337, 200 S. W. 634; Veach's Adm'r v. Louisville & I. Railway Co., 190 Ky. 678, 228 S. W. 35; Illinois C. Railroad Co. v. Peebles, 216 Ky. 9, 287 S. W. 574; Louisville & N. Railroad Co. v. Crockett's Adm'x, 232 Ky. 726, 24 S. W. (2d) 580; Cox's Adm'r v. Cincinnati, N. O. & T. P. Railway Co., 238 Ky. 312, 37 S. W. (2d) 859.

2. The form of the instruction is not criticised except in one minor particular. It advised the jury that it was the duty of the defendant's servants to ring the bell or sound the whistle of the engine at a distance of at least 50 rods from the crossing and to ring the bell or sound the whistle continuously or alternately until the engine reached the crossing, and then if the jury believed it to be an unusually dangerous crossing, and "that the sounding of the whistle and ringing of the bell were not sufficient," etc., it was the company's duty to

use such other means to prevent injury to travelers as ordinary care required. It is submitted that the use of the conjunctive "and" instead of the disjunctive "or" in the quoted part was an error. It is readily apparent that this was an inadvertence. In view of the context of the instruction, particularly the first part of it upon which the latter was predicated, the error must be deemed to have been of no consequence and harmless. Life & Casualty Co. of Tennessee v. Gream, 252 Ky. 801, 68 S. W. (2d) 402.

3. An error is claimed in the refusal of instructions offered by the defendant to the effect that the speed of the train was not to be considered as evidence of negligence, nor the fact that the speed of the train was not slackened while running through a snowstorm. As above outlined, the instructions in the usual form were given. The speed of the train was not relied upon as negligence. It was brought into the record only by the enginemen in describing how they were running and operating the train. We do not regard the refusal of the instructions as error.

4. A question as to the instruction on the measure of damages is raised. In addition to authorizing recovery for other items of damage, the jury was permitted to find "for the loss of his services as a farmer not exceeding the sum of $300." Plaintiff and his father owned and jointly managed a farm. He was confined to bed for three weeks and for four months was not able to do any kind of work. Thereafter he did light work, and says he lost practically a year's time. The plaintiff was asked, "What could you have earned and what would have been the reasonable amount of your earnings operating your farm for four months you speak of if you had not been injured?" His answer was: "Well, around $75 a month at that time of the year; it was just you might say at the beginning of spring." He testified also that "the reasonable market value" of his services at farming was $75 a month. The verdict on this account was $300. It is contended by the appellant that this was not competent evidence upon which to base an instruction as to special damages for loss of services or time; that as one of the proprietors of the farming business, no other conclusion could be drawn from the evidence than that his earnings would have been $75 a month, which would have been his in-

come, including his share of profits; that neither lost profits or earnings are recoverable in a personal injury case. The form in which the instruction is usually given, and that which has been approved for many years, is for "the value of time lost" rather than for "loss of services," or of earnings.

Loss of time, with reference to the injured party's condition and ability to earn money in his business or calling, is universally regarded as a proper element of compensation. Often this is chiefly the pecuniary loss where the plaintiff was prevented from pursuing his accustomed employment or business. Difficulty in proving definitely the value cannot relieve the wrongdoer of his obligation, although conjectural or purely speculative evidence is to be disregarded. If the injured person was employed at fixed wages or salary, the amount lost may be readily determined. If he was not of that class, evidence concerning his occupation or profession, its nature and extent, his ability to engage therein, and the antecedent pecuniary rewards for his personal skill and services may be shown. As stated in Sutherland on Damages, sec. 1246, page 4692:

> "These facts are not shown as affording the measure of damages but to aid the jury in estimating a fair and just compensation for being prevented by the injury from engaging in or prosecuting such business or work."

See, also, Gregory v. Slaughter, 124 Ky. 345, 99 S. W. 247, 30 Ky. Law Rep. 500, 8 L. R. A. (N. S.) 1228, 124 Am. St. Rep. 402.

The ability of a person to work for himself, and his practice of doing so, instead of hiring the services of another, gives a value to his time. If he has been deprived of that ability by the wrongful act of another, the obligation to compensate him for the value of the time he could not employ in his own service is imposed upon the wrongdoer. In Cincinnati, N. O. & T. P. Railway Co. v. Perkins, 205 Ky. 798, 266 S. W. 652, it was held that the fact that the firm by which a traveling salesman was employed had nothing for him to do during the period he was laid up because of his injuries could not be regarded as conclusive; that he had the right to seek other employment, and having established his incapacity, there was sufficient evidence of lost time

to authorize submission of the issue to the jury. There need not be direct or specific testimony that he had received compensation for his services or was capable of earning a specific amount. If the services of the injured party had a market value in the kind of business in which he was engaged, the fact may be proved, although the party had been engaged in business on his own account. Sutherland on Damages, sec. 1248. In Wood v. Chicago, etc., Railroad Co., 119 Mo. App. 78, 95 S. W. 946, observing that the nature of the general supervision of farmwork by a farmer is such that definite proof of the actual value thereof is hard to make, the court held it sufficient to show the extent of the operations and the work the plaintiff usually performed. So also, in Mabrey v. Cape Girardeau & J. Gravel Road Co., 92 Mo. App. 596, 69 S. W. 394. In Alitz v. M. & St. L. Railway Co., 196 Iowa, 437, 193 N. W. 423, evidence as to the extent and earnings of a farmer's business was held properly received and the jury correctly charged that they might include in the damages the reasonable value of plaintiff's loss of time and earnings. In Chicago, R. I. & P. Railway Co. v. Posten, 59 Kan. 449, 53 P. 465, similar evidence was also held competent that the jury might estimate the value of a farmer's time and labor to himself in the transaction of his own business. In Escher v. Carroll County, 146 Iowa, 738, 125 N. W. 810, and in Delano v. Pierce, 225 F. 976, 141 C. C. A. 98, a farmer was permitted to testify as to the value of his services in managing his business before and after injury.

The appellant relies on LoSchiavo v. Northern Ohio Traction & Light Co., 106 Ohio St. 61, 138 N. E. 372, 27 A. L. R. 424. The owner of a trucking business, to which he gave close personal attention, claimed, among other items of damage, loss in earnings because of his incapacity due to injury caused by the defendant's negligence. The verdict was for a very large sum which reflected an award for loss of profits, and which the court construed the trial judge's charge to the jury authorized. The opinion points out the confusion and contradictions in the authorities in respect to loss of profits and earnings as an element of damage in personal injury cases. The court held that profits of a business owned and operated by the plaintiff are not to be regarded in measuring his damage, but that earn-

ings of the injured party resulting from his personal efforts may be taken into consideration, since they represent that which is gained or merited by labor, service, or performance, or which is the reward, wages, or compensation for personal effort. It laid down as the proper measurement of such loss the compensation ordinarily paid to others rendering like service.

It does not seem necessary here to express an opinion whether or not loss of profits or earnings is recoverable as damages. We may observe, however, that in Gregory v. Slaughter, supra, this court held that in cases of personal tort loss of profits from a business may be recovered as part of plaintiff's damages. See, also, Kentucky Heating Co. v. Hood, 133 Ky. 383, 118 S. W. 337, 22 L. R. A. (N. S.) 588, 134 Am. St. Rep. 457.

While the plaintiff was asked what he could have earned or what would have been his reasonable earnings during the period he was laid up, and answered, "Around $75 a month at that time of the year," he elsewhere fixed that sum as the "reasonable market value" of his "services at farming." Realities ought never to be sacrificed to technicalities, nor strictness of language of a witness be allowed to destroy his meaning. What the plaintiff was driving at was the value of the time lost from his work. There is nothing to indicate he included any profits from his farm. Perhaps the evidence does not meet the technical requirements of proof in relation to loss of earnings or to the value of time lost by others than salaried men or wage earners; but we deem it sufficient to authorize the instruction, especially since the amount allowed is quite reasonable and relatively small.

Judgment affirmed.