## Franklin v. Louisville & N. R. Co.

(Decided March 5, 1937.)

578

W. W. DOWNING, C. MAXWELL BROWN and C. C. WILL for appellant.

TRABUE, DOOLAN, HELM & HELM and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Fairleigh S. Franklin, at about 7 o'clock on the Sunday evening of August 11, 1935, while driving alone in his coupé along Chenoweth lane in St. Matthews, Ky., was killed at a public crossing, when the engine of a freight train of the appellee, Louisville & Nashville Railroad Company, struck his coupé while stalled on the crossing.

Upon a trial of the action brought by his admin-

istrator for the recovery of damages for his death, there was a verdict and judgment rendered for the defendant company.

The administrator, dissatisfied with this judgment, has appealed.

The conditions and circumstances under which this accident occurred at the Chenoweth lane railroad crossing are for the most part undisputed and are as follows:

Chenoweth lane is a roadway connecting the Brownsboro road with the Louisville and Lexington highway and is intersected by a branch line of the defendant company, running in an eastwardly and westwardly direction between Covington and Louisville, which at the point of intersection with this lane has two main line tracks and an intermediate "passing" track.

It appears that St. Matthews is a populous unincorporated suburb of the city of Louisville, lying very near the eastern limits of that city and that by reason of its location in this populous community, Chenoweth lane is subjected to a very heavy and congested traffic along its way, leading over the intersecting railroad crossing, its volume of travel being such as to have caused the railroad to establish at the crossing, on each side thereof, electric "flasher lights" and also an electric bell, which automatically work as warning signals upon a train's coming within some 2,500 feet of the crossing, after which the signal lights and bell continue flashing and ringing until the oncoming train passes the crossing.

It is admitted that these mechanical signals were upon the occasion in evidence in good working order and very effectively served to warn the traveling public at or near the crossing of the oncoming train's approach.

It is further shown that to the east of this Chenoweth lane crossing there are some three other nearby railroad crossings (at St. Matthews, Produce, and Ridgeway) located some 1,300 feet apart, at each of which on this occasion the freight train blew the proper crossing signals, which were heard by travellers also at the Chenoweth crossing.

The testimony of the witnesses is further that ap-

pellant's intestate reached this railroad crossing either just before or immediately after the crossing signals began to work, warning him that a train from the east was then approaching it, despite which he proceeded to drive his car onto the crossing, when it was stopped or stalled on the track upon which the freight train was then approaching at a speed of some 30 to 35 miles per hour.

The evidence is further that for a brief moment, when on the crossing, deceased attempted to get his car started and then, a few seconds before the on-coming train reached him, attempted to leave it, but too late and the engine struck the car and killed him.

The evidence is undisputed that during this minute's period of the intestate's negligently and recklessly remaining in his car while stalled on the crossing, the crossing signals continued to clamorously warn him of the on-coming train; that a by-stander was shouting to him to get out of the car, the train was coming; also, that the engineer of this train, although he had just blown the three near crossing signals, upon discovering the deceased's peril at the crossing, when then some 575 feet distant therefrom, had at once applied the emergency brakes and sounded the distress whistle, using unavailingly all the means then at his command to avoid injuring the deceased.

There is no dispute as to this, its being testified by all the witnesses that the engineer of the on-coming train, when reaching such point (where he testifies he first discovered the car on the track ahead), did everything in his power and at his command to avoid injuring the deceased.

The contention is made, however, that the defendant's engineer was negligent in not sooner beginning to stop his train, when some thirteen or fourteen hundred feet east of the crossing, where it is claimed, if he were at such place observing his duty of keeping proper lookout, he could have seen deceased's car standing on the crossing. Appellant contends that the exercise of ordinary care in driving his engine required him to then slacken its speed, so as to bring it under such control as would have enabled him to stop the train, if found necessary to avert injury to deceased at the crossing.

Upon this point, however, the evidence for the defendant is that its engineer did not and could not there see the crossing, nor, due to the curving course of the railroad tracks east of the crossing, was it possible for those in charge of its train to discover the presence of this car upon the crossing when thirteen or fourteen hundred feet distant therefrom, as claimed by appellant, nor were they able to at all discover the presence of the car on the tracks at the crossing before reaching a point some 1100 feet therefrom; that no one could in fact have discovered that the deceased's car had stopped or was stalled on the particular track upon which the train was then approaching, nor could those in charge of its train do so until within some 575 feet of the crossing, when they then and there first discovered the car's dangerous position on the track ahead at the crossing and did everything humanly within their power to warn and avert the injury to deceased.

Upon the conclusion of the introduction of this evidence, each party offered instructions presenting their theory of the law applicable to the issues made by the pleadings and evidence, which were refused by the court, when upon its own motion it instructed the jury.

Apellant complains of the court's given instsruction No. 1, whereby the court submitted the case on the last clear chance doctrine, holding as a matter of law that the deceased was guilty of contributory negligence, preventing a recovery unless the agents of the defendant company could have prevented the accident after the engineer in charge of the train discovered, or, in the exercise of ordinary care, could have discovered the peril of the deceased.

The jury, finding under this instruction and evidence that the engineer had used the means at his command and exercised the ordinary care required by the instruction to prevent the accident, returned a verdict for the defendant.

Plaintiff has appealed, complaining of the instruction as erroneous in respect to the lower court's holding, as a matter of law, that the deceased was guilty of contributory negligence, which precluded his right to recover, unless the defendant company could have prevented the accident after the peril of deceased was or could, by the exercise of ordinary care, have been

discovered. Also the appellant insists that the court erred in refusing to give the instructions offered by him, by which the defendant company was required "to regulate its speed as the train passed through St. Matthews and over Chenoweth crossing."

We will now turn our attention to the consideration and decision of these objections urged for reversal, the first of which is that the court erred in holding as a matter of law that the deceased was guilty of contributory negligence.

It may be conceded that generally the question of contributory negligence where reasonable minds might differ as to it is one for the jury. Hewitt Lumber Co. v. Mills, 193 Ky. 443, 236 S. W. 949. But it is equally well established that where all the material facts, constituting such negligence, stand confessed, and show that the injured party was guilty of such negligence that the injury would not have otherwise occurred, then, in such case, contributory negligence is shown as a matter of law, and there being thus no issue as to such facts, there remains nothing to submit to the jury other than the question then arising of whether or not the defendant, upon discovering plaintiff's position of peril, in which he negligently put himself, could have then, by using the means at his command, averted the accident.

To such effect was it said and the rule so announced in Cincinnati, N. & C. R. Co. v. Rairden, 231 Ky. 141, 21 S. W. (2d) 236, 239:

"What constitutes contributory negligence is a question of law for the court, but whether the facts essential to that defense were proven is a question for the jury. Unless the act itself, or the several acts together, constitute contributory negligence, the jury may not be so directed. Jellico Coal Min. Co. v. Lee, 151 Ky. 53, 151 S. W. 26. Whether certain conduct is demanded by the standard of ordinary care is often a question for the jury. Peerless Coal Co. v. Copenhaver, 165 Ky. [195] 196, 176 S. W. 1002. In Consolidation Coal Co. v. Spradlin, 173 Ky. 229, 190 S. W. 1069, the defense was that the injured person had disobeyed specific instructions. If he did so, he was necessarily negligent. Therefore it was proper to tell

the jury, if the plaintiff disobeyed the directions, he could not recover. In Chesapeake & Ohio R. Co. v. Warnock's Adm'r, 150 Ky. 74, 150 S. W. 29, the court gave a general instsruction on contributory negligence. The concrete instruction requested was that, if the decedent knew the train was approaching and with such knowledge undertook to cross the track in front of it, he could not recover. It was proper under the evidence in that case, to give the concrete instruction, because the fact embraced in it, if it existed, constituted a defense as a matter of law.''

Further, in the case of Louisville & N. R. Co. v. Treanor's Adm'r, 179 Ky. 337, 200 S. W. 634, 638, it was said:

''The general rule in this state, as approved without deviation in numbers of opinions, puts on railroad companies in approaching ordinary grade crossings the duty of keeping a lookout and giving the statutory signals, and on the highway traveler the duty of exercising ordinary care to discover the approach of trains, and also, when the crossing is dangerous, as was this one, then increasing care commensurate with the danger is imposed on both the railroad and the traveler.''

Thus the duty is put upon a traveler of a highway, when approaching a grade crossing, to exercise ordinary care to discover the approach of trains. It cannot be doubted that the deceased here was, by his failure to exercise such care, which is undenied, guilty of contributory negligence in driving onto and in then remaining on the railroad crossing after repeated warnings given him, until struck and killed by defendant's train.

There was here no contradiction as to the facts essential for constituting deceased's conduct in going upon and remaining on the crossing, throughout the period during which he knew or was continuously warned and notified of his imminent danger from the on-coming train, contributory negligence, and, therefore, we are clearly of the opinion that the court did not err in holding deceased guilty of contributory negligence, as a matter of law, precluding his estate's right to recover except by reason of defendant's duty to avoid

injuring deceased under the last clear chance instruction given.

Appellant's further and final objection is predicated upon his contention that the engineer, upon this occasion, could have earlier discovered the presence of the deceased's car on the crossing, or when he was some 1300 feet or more distant therefrom, when the exercise of ordinary care on the part of the engineer, knowing that he was approaching this much used public crossing, should have caused him to slacken the speed of his train, so as to have it under control upon reaching this alleged dangerous public crossing, and in support of such contention cites the language of the opinion in the case of Illinois Cent. R. Co. v. Peebles, 216 Ky. 9, 287 S. W. 574, 576, to the effect that, "if the crossing was a much traveled thoroughfare, and because of its location, unusually dangerous, that the sounding of the whistle or the ringing of a bell was not sufficient, then it was the further duty of the defendant to use such other means to prevent injury as ordinarily prudent persons would use."

However, this issue as to whether the defendant could or did see or discover the car and peril of deceased in time to slacken the train's speed and avert injury to him was submitted to the jury, upon which it found adversely to appellant.

Without passing on the question as to whether or not the situation here properly presented a last clear chance case [as to which see Hensley v. Braden, 262 Ky. 672, 91 S. W. (2d) 34], 41, even if the deceased's presence or his car was earlier discovered by the defendant on the track when some 1300 feet distant from it, no reason appears, other than the deceased's natural desire to save his car, if possible, by getting it off the crossing, for his so recklessly remaining on it; it does not appear that he did not have ample time, after being warned of the train's approach, to withdraw to a place of safety; or that the defendant was charged with foreknowledge of the fact, when seeing the car on or near the track at a distance ahead, that deceased would, upon the signals repeatedly thereafter given him of the train's on-coming, leave a place of safety to go upon the crossing, or if then on, rather than near, the crossing, that he would not naturally drive from such dan-

gerous position to one of safety, or at least leave his car and himself go to a place of safety.

In view of such consideration, it is doubtful if the facts of this case, properly presenting a situation calling for the last clear chance rule, were such as imposed upon the defendant the duty to slacken the speed of his train, when first he could or should have seen deceased on the distant crossing; "the rule of ordinary care did not, however, require him to anticipate danger either real or potential" (Braden Case, supra); but certainly such duty upon the part of the defendant did arise upon his later discovering deceased's presence on the crossing, when within only some 500 feet therefrom, and was made to realize that deceased's presence there at such time was one of imminent danger for him, from which he could not escape unless the engineer might, by using the means at his command, avert the threatened injury.

However, the evidence is all to the effect that at the time of discovering the peril, the defendant did everything within its power to save the deceased from injury. In such instance, the complained of instruction told the jury it became the defendant's duty (even though the deceased was guilty of contributory negligence, in having negligently put himself and in having negligently remained in such dangerous position upon the crossing) to save him, upon discovering his position of peril, if it then could by using the means at its command, which it is undisputed defendant's agents did. Short of such duty imposed on the defendant company by the humane considerations of the last clear chance rule, the duties of both travelers upon the highway in approaching the crossing and of the railroad company in approaching it are the same, in that each is required to exercise care in approaching it, to the end of not injuring another in the exercise of his equal right to also use it. The company, looking to the proper and effective discharge of this reciprocal duty, attempted to safeguard the traveling public using this crossing from injury from its passing trains, by installing an effective system of electrically operated warning signals, fully calculated to notify the public of the danger of its approaching trains.

Having safeguarded the public by these warning precautions, judicially imposed in addition to its duty

to give the statutory signals required for warning the public, it could then reasonably operate its trains along its tracks, without threat or menace to the public, except in cases of their willful or wanton disregard of its warning signals, or, as said in the case of Payne, Agent, v. Barnette's Adm'r, 196 Ky. 489, 244 S. W. 896, 898:

> "It is perfectly clear that if at an especially dangerous crossing the railroad company erects and maintains a guard, gates, or electric bell to warn travelers of the approach of trains, operatives of its train ought not in good conscience be required to assume the burden which the Treanor and like cases placed upon them over and above those imposed by statute (upon evidence and under circumstances not here present), because that burden was judicially imposed upon the sole ground that at such a place the statutory signals were not reasonably sufficient for the purpose of effectively warning travelers of the train's approach and the reason upon which the doctrine of those cases is based is entirely lacking where the railroad company has erected at a crossing appliances which, if maintained in order will give to the travelers such effective notice as they can hardly fail to observe if they exercise any degree of care whatever for their own safety, and as the trainmen could not possibly give with any means at their command." (Parenthetical distinction ours.)

In view of these principles, which we conceive here applicable, we conclude that the appellant's contentions, as discussed, supra, are without merit, and that the court further did not err in giving the complained of instruction on the last clear chance rule without any express qualifications as to travelling at slackened speed, in so far as it affected appellant. Therefore, the judgment is affirmed.